18 Cal.App.4th 719 (1993)
22 Cal. Rptr.2d 485
In re KAILEE B. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S SERVICES, Plaintiff and Respondent,
v.
RONALD B., Defendant and Appellant.
Docket No. B065554.
Court of Appeals of California, Second District, Division Two.
September 1, 1993.
*721 COUNSEL
Jill C. Hatfield, under appointment by the Court of Appeal, for Defendant and Appellant.
De Witt W. Clinton, County Counsel, Joe Ben Hudgens, Deputy County Counsel, Jeanette Malouf, Jones, Day, Reavis & Pogue and Elwood Lui for Plaintiff and Respondent.
OPINION
GATES, J.
Ronald B. appeals from an order of the juvenile court declaring his minor children Kailee and Nicolas, aged two and one-half and one and one-half, respectively, to be dependents of the court under Welfare and Institutions Code section 300. He contends: "I. The court erred by refusing to strike the minor's hearsay statements contained within the written social study report where the court later determined the minor was incompetent to testify at trial due to an inability to distinguish truth from falsehood. II. There was insufficient evidence to sustain the petition as to the minors."

FACTS
At the jurisdictional hearing respondent Los Angeles County Department of Children's Services submitted the case on the social study report. The report disclosed that the minors reside with their mother, who separated from *722 appellant in March 1991. Following their parents' separation, the minors visited appellant on Wednesdays and alternate weekends. After the visits with appellant, Kailee's behavior began to change. She was withdrawn, sucked her thumb, threw tantrums and was resistant to supervision.
Kailee told her mother she slept and bathed with appellant. On occasion, when Kailee's maternal aunt attempted to wipe Kailee after she had gone to the bathroom, Kailee remarked, "`It's sore, be careful.'" Kailee mentioned monsters and a "Mr. Magic" or "Uncle Magic" to several people, including her maternal aunt, her maternal grandmother and her mother.
Describing Mr. Magic to her mother, Kailee said he "has hair, is little but gets big." She further related that "Mr. Magic was in her mouth and then is finished" and that he "bites her when [sic] she is sore, referring to the genital area." As a result of Kailee's statements and a redness in her genital area, Kailee's mother took Kailee to see a pediatrician. During the appointment, Kailee reported, "`It hurts down there'" and advised the doctor as she examined Kailee's labia, "`The monster bits [sic] me there.'"
When Kailee was interviewed by the children's welfare worker, she also informed her that Mr. Magic "gets big and it gets little," that "it comes out of Daddy's panties" and that she "kissed Mr. Magic." In her discussion with the worker about Mr. Magic, Kailee indicated, "`That's my favorite game.'" Asked whether Mr. Monster kissed her anywhere, Kailee pointed to her feet, then her knees and finally between her legs. She said, "`Daddy kisses me down there (pointed to her bottom area) like I kiss Mr. Magic ... it feels good; it doesn't hurt me.'"
The social worker who prepared the social study report, Harold Feldman, interviewed Kailee on October 16, 1991. Kailee revealed that she played with Mr. Magic, but did not divulge who Mr. Magic was. Nicolas was unable to make a statement because of his age.
After respondent rested, appellant called Feldman to testify about the interviews he had conducted in order to prepare the social study report. Thereafter, appellant called his two-and-one-half-year-old daughter herself as a witness in what he acknowledged was an attempt to prove she was incompetent to testify.
The voir dire examination that was subsequently conducted of this infant made manifest the tragic unsuitability of our formal, adversarial, judicial system to deal with such issues as here presented. In a courtroom with her parents excluded, Kailee was confronted by a minimum of seven adult *723 strangers, i.e., the judge, court reporter, and five attorneys who individually represented her, her father, her mother, her even younger sibling, Nicolas, and the petitioning department of children's services.
For the most part Kailee failed to respond to the questions put to her. She did answer certain questions concerning the names of her stuffed animals and the color of various objects. In an effort to ascertain whether Kailee was able to understand the duty to tell the truth, she was at one point asked, "if you tell a lie or a fib, does something happen to you?" She responded, "Uh-huh. Daddy starts to grab me." When questioned further about who grabs her, she replied, "Dinosaurs grab me" and "Daddy has dinosaurs."
Finally, there was a colloquy between Kailee and one of the attorneys, Jo Ann Stipkovich, during which the attorney referred to herself as Kailee and Kailee as Jo Ann. Kailee repeatedly corrected her. The court ultimately agreed, however, that Kailee was not capable of understanding an oath and, consequently, was incompetent to testify in a courtroom setting.
Appellant also called his mother as a witness. She testified that he and the minors usually spent every other weekend at her home. She denied she had ever witnessed him engage in inappropriate behavior toward Kailee or seen them bathe together, but conceded Kailee did sleep in the guest room with him.
Testifying as a witness on his own behalf, appellant denied he had ever touched Kailee for sexual gratification, that she had orally copulated him, or that he had used or heard Kailee use the term "Uncle Magic" or "Mr. Magic."
After entertaining argument, the court ruled as follows: "I do not believe that any future appellate interpretation of [In re] Malinda S. [(1990) 51 Cal.3d 368 [272 Cal. Rptr. 787, 795 P.2d 1244]] will require competency of a witness in court before appearance  hearsay statements can be admitted into evidence in the social study.
"As far as the evidence in the case, you even drew my attention to an old case that you and I were both on  perhaps other counsel were on it, I'm not sure  where I made the comment, `there's no way a child could have known these things unless it actually happened to the child, or the child experienced them.' And I feel the very same way today in this case as I did in that one.
"These are not the statements that a two-year-old, or a two-and-one-half-year old child is going to be able to make up, or have any knowledge of. It *724 bespeaks knowledge way beyond a child's years, way, way beyond the child's years, unless something is actually occurring to the child.
"I have no evidence, in my opinion, of coaching. And I think Mr. Leftwich's [Kailee's counsel] argument focused very logically on the three levels that you proceed [sic].[[1]] I accept each one of them."
The court then found that Kailee and Nicolas were persons coming within the descriptions of Welfare and Institutions Code, section 300, subdivisions (d) and (j), respectively.
Feldman prepared a supplemental report for the contested disposition hearing which contained an account of his interview with Kailee's therapist, Lori Swiznowski. Swiznowski stated Kailee was somewhat apprehensive at her first visit with appellant but appeared glad to see him. Swiznowski additionally reported that appellant had denied any sexual improprieties with Kailee. In an attempt to explain Kailee's statements he asserted that, "on the day of the alleged sexual incident, he captured a lizard for Kailee, and he called it a dinosaur. He added that when he tried to pull the lizard out of a jar, the lizard bit him." Swiznowski, in recounting the details of her play sessions with Kailee, said she had asked Kailee if she saw Uncle Magic anywhere, and Kailee replied, "`No, Uncle Magic is in Daddy's pants. I hold it.'" Kailee later remarked that "she pulled Uncle Magic." Kailee expressed no anger toward appellant when she discussed her sexual experience with him.
The juvenile court declared the minors to be dependent children of the court. It permitted them to remain in their mother's home but required their mother to join Kailee in counseling if Kailee's counselor felt it appropriate. It ordered appellant to participate in individual counseling and a group sexual abuse counseling program which would not require him to admit guilt. It further directed appellant to be in conjoint counseling with Kailee and concluded appellant's visitation with both minors must be monitored.

DISCUSSION
(1) Appellant's contentions are without merit. In In re Malinda S., supra, our highest court acknowledged that social studies typically contain hearsay *725 and even multiple hearsay, but nonetheless held they are both admissible and competent evidence on which to base a finding that a minor falls within the juvenile court's jurisdiction under Welfare and Institutions Code section 300. As long as certain safeguards are met to protect the rights of the parent, this principle applies to hearsay statements made by the minor that are contained in the social study report even though the minor is not competent to testify in a courtroom setting.
Historical analyses of the arcane judicial rules concerning hearsay and competency that have developed over the centuries in cases involving adults, whether civil or criminal in nature, are of little assistance in proceedings designed only to determine how best to safeguard the welfare of children of extremely tender years. Such children may be totally incapable of treating with the abstractions that underlie testimonial competency, yet are quite capable of observing and reporting on specific events to which they are privy.
This capacity was recently addressed in In re Dirk S. (1993) 14 Cal. App.4th 1037 [17 Cal. Rptr.2d 643]. The juvenile court there found five-year-old Ashley incompetent to testify at trial, but was unpersuaded by her father's argument that the ruling precluded admission of her hearsay statements included in the social study reports. The court explained, "`The standards for qualifying to testify as a witness and the standards used to determine whether or not in a non-court-like setting the little girl is capable of accurately and honestly remembering what happened are two different things.... [¶] Ashley ... is a young little child. [¶] She was very intimidated by the number of people. She was scared.' `The only finding I made today was that she was not able to qualify as a witness and, therefore, testify at all today. [¶] I think that a child at that age can be overwhelmed, intimidated, frightened, scared, and become very inarticulate, can giggle, and otherwise not qualify. [¶] But in a non-courtroom setting, in a social setting where she is not surrounded by four or five adults and a court reporter and the intimidating circumstances that her questioning today presented to her, she could communicate, I think, quite readily and with ease.'" (Id. at pp. 1040-1041, fn. 2.)
The appellate court similarly rejected the father's claim that he had suffered a violation of his constitutional right of confrontation by the juvenile court's refusal to strike Ashley's statements from the social study reports. In so holding, the court reasoned, "`[d]ependency proceedings are civil in nature, designed not to prosecute a parent, but to protect the child.' In these proceedings, `the paramount concern is the child's welfare.' [Citation.] We further note that `[a]s a matter of constitutional principle, the United *726 States Supreme Court has held that a state's compelling interest in protecting child victims of sex crimes from further trauma may in some instances outweigh the right of confrontation....' [Citation.] Certainly, the due process rights of parents in dependency proceedings are no more extensive than the rights of defendants in criminal proceedings, the latter entailing a greater threat to an individual's liberty interests. [¶] Here, Ashley was unavailable as a witness by virtue of her incompetency to testify. [Citation.] The court in In re Malinda S. found the social study report prepared for the dependency hearing to have the requisite `indicia of reliability,' supporting a conclusion that it qualified as an exception to the hearsay rule. [Citation.] [¶] Moreover, the record reveals that appellant's counsel was granted an opportunity to cross-examine the preparer of the report, regarding the circumstances surrounding her interview of Ashley and Ashley's demeanor during the interview. [Citation.]" (14 Cal. App.4th at pp. 1044-1045, fn. omitted, italics in original.)
(2a) It is likewise implicit from the comments of the juvenile court in the instant case that its incompetency finding was based on Kailee's inability to testify in a courtroom, not on the unreliability of her statements as quoted in the social study reports. Therefore, the court was entitled to consider those statements under the hearsay exception recognized in In re Malinda S.
Further, Kailee's remarks to her aunt and pediatrician about her vaginal soreness were admissible under the physical sensation exception to the hearsay rule to establish her "present physical condition and her view of its cause." (In re Emilye A. (1992) 9 Cal. App.4th 1695, 1713 [12 Cal. Rptr.2d 294].) In addition, the independent observations of Kailee's mother, aunt and grandmothers that she slept in the same room with appellant, that her behavior changed after visiting appellant, and that her genital area was inflamed were wholly consistent with instances of sexual abuse.
Once credited, this evidence provided ample support for the juvenile court's finding of jurisdiction pursuant to Welfare and Institutions Code section 300 and its dispositional order. (In re Dorinda A. (1992) 10 Cal. App.4th 1657, 1664 [13 Cal. Rptr.2d 653].) In the absence of any indication that appellant was deprived of an opportunity to subpoena and cross-examine any of the individuals in whom Kailee had confided, the court's decision in the premises is binding on appeal.
(3) Although we have concluded the remarks attributed to Kailee in the reports were admissible for their probative value under the social studies exception to the hearsay rule, it is important to emphasize that in order to ascertain and protect the best interests of the child in actions of this sort, the *727 determinative question often is not the literal truth of every matter implied or potentially deducible from the child's statements, but rather whether those statements, in fact, were made, and if they were, what could have caused the child to utter them.
As the court recognized in In re Dorinda A., supra, 10 Cal. App.4th at page 1662, "[t]here is authority for the proposition that a minor's out-of-court statements that a particular individual molested her are admissible not to prove he actually did, but as circumstantial evidence the child believed he did. In other words, these statements `supply circumstantial evidence she had a certain state of mind.... Whether the statement is true or not is irrelevant to this use of the statement. Thus it is nonhearsay for this purpose....'"
In such instances, the ability to cross-examine the parties to whom these statements were allegedly made concerning how, when and why they were made will, ordinarily, adequately protect the rights of the subject parent, even though he or she may not be able to directly interrogate the child under oath. (See In re Dirk S., supra, 14 Cal. App.4th at pp. 1044-1045.)
(2b) As we previously noted, there is nothing to suggest appellant's rights were in any way compromised. Consequently, when the juvenile court became convinced of Kailee's belief that her father had molested her, the court was clearly justified in finding it would not be in her best interest to permit appellant's continued contact with her in an unmonitored setting, at least until both of them had undergone counseling. (In re Dorinda A., supra, 10 Cal. App.4th at p. 1663.)
We find rather unsettling counsel's reference in her reply brief to the Blackstone's observation, "[I]t is better that ten guilty persons escape, than that one innocent suffer." (4 Blackstone's Commentaries 358.) While one may accept this homily in a criminal setting, though its exact statistical basis has not been precisely defined nor universally accepted,[2] we trust that few, if any, would agree it is better that 10 pedophiles be permitted to continue molesting children than that 1 innocent parent be required to attend therapy sessions in order to discover why his infant daughter was falsely making such appalling accusations against him.
We cannot accept appellant's contention that the court in In re Basilio T. (1992) 4 Cal. App.4th 155, 167 [5 Cal. Rptr.2d 450], held that merely because *728 a juvenile court determines a minor is not competent to testify at trial, it must always, and automatically, "strike his comments" and "totally disregard[]" them in determining what is in the child's best interests. Obviously if it had, we would be forced to disagree. However, as pointed out in In re Daniel Z. (1992) 10 Cal. App.4d 1009, 1017 et seq. [13 Cal. Rptr.2d 139], In re Basilio T.'s actual ruling was far more limited and not truly inconsistent with our decision here.

DISPOSITION
The judgment (order declaring the minors to be dependent children of the court) is affirmed.
Boren, P.J., and Nott, J., concurred.
NOTES
[1] Leftwich had argued, "These kinds of cases are extremely difficult, in the sense that you don't have a child that is old enough to come into court and tell the court what has happened to her, or not happened to her. So the evidence before the court  the only thing the court can really consider, in terms of the truthfulness of the allegations, are the statements that the child made, which are admissible under Malinda S.; and the question becomes, one, were the statements in fact made? [¶] Two, if they were made, was the child coached? [¶] Or, three, were they statements of such a nature that a child this age would not make them unless a child actually experienced the incidents as pertaining to the statements?"
[2] "`[T]is much more Prudence to acquit two Persons, tho' actually guilty, than to pass Sentence of Condemnation on one that is virtuous and innocent." (Voltaire, Zadig (1749, reprinted 1974) ch. 6, p. 53.)

"That it is better 100 guilty Persons should escape than that one innocent Person should suffer...." (Letter from Benjamin Franklin to Benjamin Vaughan, Mar. 14, 1785, in 9 The Writings of Benjamin Franklin 293 (A. Smythe ed. 1909.))