28 Cal.App.4th 908 (1994)
33 Cal. Rptr.2d 848
In re CARMEN O. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent.,
v.
JOSE O., Defendant and Appellant.
Docket No. D020597.
Court of Appeals of California, Fourth District, Division One.
September 29, 1994.
*910 COUNSEL
Dorothy J. Almour, under appointment by the Court of Appeal, for Defendant and Appellant.
Lolyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.
Kandy Koliwer, under appointment by the Court of Appeal, for Minors.
*911 OPINION
FROEHLICH, J.
Jose O. (Father) appeals an order of the Juvenile Court establishing jurisdiction over his two minor children, Carmen O. (age four) and her younger brother, Francisco O. (age three), and removing the children from his custody. The order was based on a finding under Welfare and Institutions Code section 300, subdivisions (d) and (j) that Father had sexually abused Carmen and that Francisco also was in danger of abuse. Father contends that the court's ruling was based on inadmissible evidence, and that when the improperly admitted evidence is excluded there is insufficient evidence to support the order.
As our recitation of the testimony will indicate, assuming the questioned evidence was properly admitted, there is ample evidence to support the court's findings and order. Accordingly, we will address the evidentiary issues and in so doing will find that Father's contentions should not be sustained, making it unnecessary for us to assess in any depth the remaining weight of the evidence.
The court conducted separate jurisdictional and dispositional hearings. The notice of appeal states that it is an appeal from the dispositional order. We conclude, however, that it is also an appeal from the findings and order of jurisdiction. The evidentiary contentions appear to relate to testimony and evidence given at both hearings. We therefore believe it unnecessary to distinguish between the two hearings. Since the dispositional order is based upon the prior finding of jurisdiction, and since the appeal is literally from the later order, we believe that appellant is in a position to complain about any improperly admitted evidence at either hearing.
What was the evidence?
Carmen's testimony was solicited at both hearings. Before this attempt her psychologist, Dr. Garcia, advised that Carmen would be afraid to testify in front of her father, that she did not speak English, and that she would not testify with an interpreter. Garcia also advised that Carmen would have difficulty talking to the judge or responding to questions from attorneys. The doctor's predictions were accurate. Carmen would not respond to questions, keeping her head down and staring at her hands. The court found at the jurisdictional hearing that Carmen was "not competent to testify as a witness," but immediately clarified this statement by adding that the problem was inability to communicate at the time of the hearing, for unknown reasons, one of which, the judge speculated, might be the "formality of these proceedings." At the time of the dispositional hearing the court expanded on *912 its conclusions by stating that it could not tell whether Carmen was competent: "In fact, she may be very competent. I don't know that, but I will find that she is unable to testify here today in that she is unwilling to respond to questions."
Ruby is the 13-year-old half sister of Carmen, who lived with her grandmother. She testified that one evening when she was babysitting, Carmen was crying and saying that she hurt in her "private" part. Carmen said "Papi me puso su pepino en mi panochita" (Daddy put his cucumber in my private part). A few days before Carmen had told Ruby in Spanish: "Dad he put his finger in my butt." Ruby told her grandmother about these statements.
Hilaria is Carmen's maternal grandmother (hereafter grandmother). She confirmed that Ruby had told her of Carmen's statements and that later that night grandmother found Carmen crying, and helped her by giving her a towel with warm water as a compress. The next morning grandmother told Carmen's mother, Eugenia, about the episode.
Mother Eugenia testified that she noticed nothing amiss until advised by grandmother of Carmen's accusations (as made to Ruby). Mother asked Carmen about the incidents but could elicit no explanation. Mother apparently discounted the information, believing Carmen's hurting might be the result of use of perfumed soap.
Written reports of interviews with Carmen and others were admitted into evidence. One presented the results of an interview of Carmen at Children's Hospital by a social worker. Carmen repeated her accusation of sexual abuse to the social worker, saying her father had put his penis on her private parts "many times." She also told the social worker that her father had a large penis. Also admitted into evidence was the official social study report prepared by the department of social services (Department). This report contained similar hearsay references to what Carmen had told various people about her molestation. The social worker apparently did not, however, interview Carmen directly. The report also contained the results of a medical examination which indicated consistency with the possibility of hymen injury.
Father denied any sexual abuse and stated that he had touched Carmen in her private parts only to wipe her after she used the toilet. Objections and motions to strike were made respecting the admission of all of Carmen's statements, as derived through the testimony of other witnesses or via the written reports, and an objection was made specifically to the reports. The court overruled all such objections.

*913 DISCUSSION
The appeal logically divides into three separate positions. The first is that since the court found Carmen to be incompetent as a witness it was error to admit any of her statements, even though they might qualify under some exception to the hearsay rule (the "incompetency objection"). The second is that the hospital report and the sociologist's report should not have been admitted (the "social study reports objection"). The third is that the testimony of third parties, principally sister Ruby and grandmother, which recounted Carmen's out-of-court statements, should have been excluded as hearsay. We deal briefly with the first two contentions, but find it necessary to give somewhat extended treatment to the third.

1. The Incompetency Objection.

(1) Appellant's principal authority supporting the incompetency objection is our case of In re Basilio T. (1992) 4 Cal. App.4th 155 [5 Cal. Rptr.2d 450] (hereafter Basilio T.). During the jurisdictional hearing the court in that case examined in chambers the minor alleged to have been abused and found him not competent to testify because of an inability to distinguish between truth and falsehood. (Id. at p. 161.) The court nevertheless admitted the social study which included hearsay reports of statements made earlier by the child. The appellate court noted that under In re Malinda S. (1990) 51 Cal.3d 368 [272 Cal. Rptr. 787, 795 P.2d 1244] (hereafter Malinda S.), social study reports in general are admissible, but concluded that the hearsay statements of the child should have been stricken. This was not because the statements were hearsay, but because the child's status of incompetency as a witness precluded admission of all his testimony and prior statements. (4 Cal. App.4th at pp. 166, 167.)
The reach of this precedent has been clarified, however, by subsequent decisions. The minor in In re Dirk S. (1993) 14 Cal. App.4th 1037 [17 Cal. Rptr.2d 643] (hereafter Dirk S.) was incompetent to give testimony in court; however, the reason was not inability to distinguish between truth and falsity, as in Basilio T., but was the fact that the court surroundings were intimidating, rendering the child inarticulate. (Dirk S., supra, 14 Cal. App.4th at pp. 1039, 1040.) The court thus concluded the minor's out-of-court statements, as reflected in the social study report, at a time when the record indicated she was able to distinguish between truth and falsity, were admissible.
Similarly, in In re Kailee B. (1993) 18 Cal. App.4th 719 [22 Cal. Rptr.2d 485], the court found a two-and-one-half-year-old child to be incapable of understanding an oath and hence incompetent to testify in a courtroom *914 setting, but concluded that this did not make incompetent her previous statements to her mother, pediatrician and social workers indicating her father had molested her. Finally, our court in In re Clara B. (1993) 20 Cal. App.4th 988 [25 Cal. Rptr.2d 56] had another opportunity to revisit the issue. The opinion, written by the same justice who authored Basilio T., dealt with the admissibility of a child's out-of-court statements for a purpose other than proof of the truth of the matter asserted (in that case to show the child's fear of her father). However, in the course of the opinion the court had occasion to reference the Dirk S. opinion, and did so with approval of its construction of Basilio T. (In re Clara B., supra, 20 Cal. App.4th at p. 997.)
Carmen's incompetency to testify was like that of the minor in Dirk S.: The determination of her inability to testify in a courtroom setting was not related to any finding of inherent incompetency, but, as suggested by the court, was probably the result of fear generated by the formality of the proceedings. While the court made no specific finding of competency in terms of her precourt statements, its admission of these statements into evidence indicates, at least by implication, a determination that she was at these prior times competent.[1] On the basis of competency, therefore, Carmen's pretrial statements were not inadmissible.

2. The Objection to the Social Study Reports.

(2) Appellant acknowledges that Malinda S. established the rule that social study reports are admissible into evidence in dependency hearings, including hearsay contained in the report. A first position taken by appellant is that in Basilio T. error was committed because Carmen's hearsay statements included in the reports should have been excluded on the ground of her incompetency. We have rejected this contention in our discussion of competency, above.
Appellant's second position is that the report prepared by the Department should not have been admitted because it is an unreliable and clearly biased report. Appellant focuses on the rationale contained in Malinda S. for admitting social study reports. The Supreme Court had previously held, in Daniels v. Department of Motor Vehicles (1983) 33 Cal.3d 532 [189 Cal. Rptr. 512, 658 P.2d 1313], that accident reports filed by private individuals could not be used to support a driver's license suspension. The Malinda S. court found social study reports prepared by Department personnel to be *915 more reliable than the report considered in Daniels because the official social study reports "are prepared by disinterested parties in the regular course of their professional duties [imparting] elements of objectivity and expertise [which] lend them a degree of reliability and trustworthiness not present in Daniels." (Malinda S., supra, 51 Cal.3d at p. 377.)
Pointing to omissions in the social study report and to such factors as its recitation of thirdhand hearsay, appellant argues the report should therefore be considered slanted and "result oriented" to the effect that it is not trustworthy and hence not within the admissibility rule of Malinda S. We disagree with the conclusion.
The foundation for admission of a social studies report, we assume, is the showing that it was made by a properly designated official agent of appropriate training and authority  hence by a "professional." This showing creates a presumption of objectivity and fairness. A court presumably would be within bounds in determining that a specific report was in fact biased, inaccurate or incomplete, and on such grounds excluding it. Such finding would be a finding of fact, however, peculiarly within the province of the trial judge. The issue was presented to this trial judge via a motion to strike the report, and the motion was denied. While the social study report may not be a model of professionalism or accuracy, whether it is so far off the mark as to warrant striking is a question of weighing whatever deficiencies may exist in it against the benefit otherwise to be derived. This weighing process was accomplished by the court, there is substantial evidence supporting its order of admission, and we cannot find the ruling to have been in error.[2]

3. The Hearsay Objection.

(3a) Appellant contends that the testimony of sister, mother and grandmother which recited out-of-court statements made by Carmen was inadmissible hearsay and that its consideration constituted prejudicial error. The Department responds by noting that much of the same information was contained in the social study reports and hence was received properly in any event. Also the Department argues that many of the out-of-court statements were admissible on various well-recognized exceptions to the hearsay rule, that is, a recitation of physical or mental sensation (Evid. Code, § 1250), a "spontaneous statement" (Evid. Code, § 1240), or a "fresh complaint" (see *916 People v. Meacham (1984) 152 Cal. App.3d 142, 157-158 [199 Cal. Rptr. 586]).
While we might be able to resolve the contention by finding some of the otherwise hearsay statements to be within recognized exceptions, we would have difficulty so classifying all the statements. The most damaging statement appears to be that "Daddy put his cucumber in my private part." This is not a statement of physical sensation. It does not qualify as a "spontaneous statement" because it is too far removed in time and place from the alleged incident. (See 1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 714, pp. 697, 698.) The Department argues that it qualifies as a "fresh complaint." In rape and other sex offense cases the common law assumes that the victim will promptly complain of the attack, and that failure to do so will permit the jury to infer that the late accusation is a fabrication. Accordingly, the argument goes, the victim must be able to show that she did in fact complain. (See People v. Wilmot (1903) 139 Cal. 103, 105 [72 P. 838].) Although some cases have suggested a very liberal interpretation of the requirement of "fresh" (see People v. Clark (1987) 193 Cal. App.3d 178, 181-182 [238 Cal. Rptr. 230]; People v. Burton (1961) 55 Cal.2d 328 [11 Cal. Rptr. 65, 359 P.2d 433]), we have some question as to whether the complaint in this case was shown to have so qualified. Also, it is noted that the complaint is admitted not for the purpose of showing its truth, but simply to demonstrate that the complaint was in fact made. Under this theory some courts have held that only the fact of the complaint can be admitted into evidence, and the details including the identity of the perpetrator are inadmissible. (See Graham, The Cry of Rape: The Prompt Complaint Doctrine and the Federal Rules of Evidence (1983) 19 Willamette L.Rev. 489, 492, passim.) While this interpretation has not been articulated in California, the limited purpose for which the "fresh complaint" is admissible is theoretically an inhibition to the utility of the evidence. In this case, for instance, it is obvious that Carmen's complaints were introduced and used not only for the limited purpose of showing that she did complain, but also to identify her father as the abuser.
There also were other out-of-court statements by Carmen which even the Department apparently finds difficult to pigeonhole in any previously recognized exception to the hearsay rule. Carmen was reported, for instance, to have said that her daddy had a very large "cucumber" (her word for penis). The only conceivable purpose of this evidence would be to demonstrate that Carmen had seen her father's erect penis, hence supporting the contention that she had been abused.
(4) Considering philosophically this area of use of out-of-court statements and construction of the hearsay rule and its exceptions, we are moved *917 to comment that its administration in dependency hearings is unsettling. The factual background of the typical dependency case often reveals statements of child victims which seem under the circumstances to be reliable, and which juvenile court judges should be entitled to consider for the substance and truth of the statement.[3] Reproduction of these statements from the mouths of the victims very often, however, becomes impossible for reasons revealed by the cases previously cited. A child will be afraid publicly to accuse his or her father; the child may be cowed by the formal setting of the court; he or she may be intimidated by adverse counsel and cross-examination. Hence we often have occasion to seek means of admission of obvious hearsay statements, and we appear to achieve our objective by straining traditional hearsay concepts.
The Department appreciates this dilemma and proposes a solution: that we recognize the existence of what should be deemed a severable exception to the hearsay rule, which the Department has labeled "The Residual Hearsay Exception." This potential exception is best discussed in 2 Myers, Evidence in Child Abuse and Neglect Cases (2d ed. 1992) Child Hearsay Exception, section 7.46, pages 266-273 (Myers). Describing a general exception to the hearsay rule for children's statements recounting sexual abuse, the author cites as illustrative the Washington statute,[4] which permits admissibility of a child's statement upon a finding by the court that "... the time, content, and circumstances of the statement provide sufficient indicia of reliability" and the child either testifies at trial or is unavailable as a witness.[5] Myers reports the existence of similar "child hearsay exceptions" in other states, as *918 well as the more general "residual hearsay exception." (See 2 Myers, op. cit. supra, § 7.46, p. 267.)
The "residual hearsay exception" is illustrated by rule 803(24) of the Federal Rules of Evidence (28 U.S.C.). This provides for the admissibility of an out-of-court statement not covered by the 23 previously stated specific exceptions if it has "equivalent circumstantial guarantees of trustworthiness, ..." Before admitting such evidence the court must find that the statement is evidence of a material fact, that it is more probative on the point for which it is offered than other evidence reasonably available, and that "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence...."
California has no similar statutory "residual hearsay" provision. Evidence Code section 1200 precludes the admissibility of hearsay "[e]xcept as provided by law." The Supreme Court in Malinda S., supra, 51 Cal.3d at page 376, noted that "[Department] correctly observes that exceptions to the hearsay rule are not limited to those enumerated in the Evidence Code; they may also be found in other codes and decisional law." Decisional law is that found by common law courts, the obvious implication of which is that an appellate court must first identify some theretofore undiscovered principle before it can be utilized. We believe the identification of the "Child Hearsay Exception" as applicable to children's statements in dependency trials has already been impliedly recognized, and that it is time to give it a name.
Before reviewing existing local treatment of the issue, however, we should give credit to the persuasive coverage given it by the National Legal Resource Center for Child Advocacy and Protection of the American Bar Association.[6] The report of this research and study project, cited herein as "Recommendations" (see fn. 6, ante), first noted the administrative and judicial difficulties typically encountered in child abuse cases. "[S]exual *919 abuse cases traditionally have been difficult to prove because of various limitations, including the following: (1) lack of physical evidence of sexual activity because of a time lapse in the reporting of the activity or the nature of the contact; (2) lack of corroborating eyewitnesses; (3) reluctance of family members to testify; (4) the victim's retraction of the story; and (5) lack of credibility of some child victims due to limited verbal and cognitive abilities." (Recommendations, supra, at p.v.)
One focus of the study was on the treatment of out-of-court statements of sexual abuse by children. The report noted the difficulties of admitting out-of-court statements by children, and after reviewing the traditional hearsay rule and its exceptions, found that "... the existing hearsay exceptions are inadequate and do not permit most statements of child sexual abuse to be admitted into evidence. A special hearsay exception ... should be created for admitting these statements, or in the alternative, a `residual' exception should be adopted (as is found in the Federal Rules of Evidence) which often would apply to such statements...." (Recommendations, supra, at p. 35.)
The specific rule of evidence proposed by the report follows the Washington statute in many respects, but contains the additional admonition that in determining the reliability and hence admissibility of the out-of-court statement "... the court should consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, the reliability of the assertion, and the reliability of the child witness...." (Recommendations, supra, at p. 34.)
Being thus convinced of the merit of an expansion of exceptions to the hearsay rule where children's statements are relevant to child abuse hearings, we look to find any California precedent possibly in accord. A start in this investigation is In re Tasman B. (1989) 210 Cal. App.3d 927 [258 Cal. Rptr. 716]. The issue was the admissibility of the victim's statement that "My daddy hurt me." In this pre-Malinda S. case the appellate court noted Welfare and Institutions Code section 358, subdivision (b), as well as California Rules of Court, rule 1376(d), which provide for the admission of social study reports into evidence. The court concluded its analysis, however, with the broad statement that "Relevant hearsay evidence is therefore admissible at the disposition hearing. It is also admissible at the jurisdiction hearing." (210 Cal. App.3d at p. 933.)
In In re Dorinda A. (1992) 10 Cal. App.4th 1657 [13 Cal. Rptr.2d 653], the court was similarly presented with the problem of the child's out-of-court accusation of her father. The four-year-old was unable to testify in court, and the proffered testimony was her mother's recitation of the child's complaint to her. While the appellate court avoided a direct ruling on the issue by *920 finding adequate other evidence to support the trial order, it nevertheless stated that the statements should be admissible. Accusations of molest, the court said, constitute circumstantial evidence that the child believes she has been molested, go to the child's state of mind, and accordingly are not hearsay. (Id. at p. 1662.) It is this very sort of circular reasoning that motivates us to attempt a declaration of a simple definition of the child's hearsay exception.
Further support for the existence of the exception, without benefit of name, is found in In re Kailee B., supra, 18 Cal. App.4th 719. The court here dealt with a child's statement of accusation contained in a social study report, and hence could rely on Malinda S. Commenting in general, however, the court stated: "Historical analyses of the arcane judicial rules concerning hearsay and competency that have developed over the centuries in cases involving adults, whether civil or criminal in nature, are of little assistance in proceedings designed only to determine how best to safeguard the welfare of children of extremely tender years. Such children may be totally incapable of treating with the abstractions that underlie testimonial competency, yet are quite capable of observing and reporting on specific events to which they are privy." (Id. at p. 725.)
In In re Cheryl H. (1984) 153 Cal. App.3d 1098 [200 Cal. Rptr. 789] the evidentiary contest related to testimony by a court-appointed psychiatrist who examined and interviewed the victim child. The doctor related the child's statement that her daddy had put his penis in her mouth, testified that she believed the child had been molested, and further opined that the perpetrator was the father. The appellate court held that the accusatory statements by the child were hearsay and should have been excluded in terms of their accusatory content, but were nonetheless admissible as nonhearsay evidence of state of mind. (Id. at p. 1128.) In reaching this conclusion the court ruled out admission of the child's statements as "spontaneous exclamations" or "fresh complaints," because the statements were made long after the event and in fact were not complaints. (Id. at p. 1129.) In wrestling with the problem of construing hearsay rules in this context the appellate court stated: "We are sympathetic to the difficulties of proving sexual abuse against very small children. But this problem should be addressed squarely through consideration of an amendment to the hearsay rule...." (Id. at p. 1125.) The court noted that Evidence Code section 1200 creates "some small leeway in the California Evidence Code for the courts to create new hearsay exceptions" (id. at p. 1125 and fn. 31), but found such creativity not necessary in this case because of adequate other admissible evidence. It declined to venture into the new territory, at least partly, because "... this would not be a very suitable case in which to consider the possibility of *921 defining a new `residual exception' to the hearsay rule. In part because no objection was lodged at the hearing, the trial court and the parties had no occasion to develop the sort of detailed foundational testimony  the special badges of reliability  which the Wisconsin Supreme Court, for instance, found so important in articulating a `residual exception' for certain hearsay statements by child victims of sexual abuse. Thus, we defer to another day and a more thoroughly developed set of facts consideration of whether California courts should create a new exception for some hearsay statements by young sex victims." (Id. at pp. 1125, 1126, fn. omitted, original italics.) The Wisconsin indicia of reliability were: "the age of the child, the nature of the assault, physical evidence of such assault, relationship of the child to the defendant, contemporaneity and spontaneity of the assertions in relation to the alleged assault, reliability of the assertions themselves, and the reliability of the testifying witness." (Bertrang v. State (1971) 50 Wis.2d 702 [184 N.W.2d 867, 870].)
(3b) This court believes the time has now come, and this case is ripe for, a recognition of what we will call a "child dependency hearsay exception." The trial judge in this case, like that in In re Cheryl H., supra, 153 Cal. App.3d 1098, did not have the benefit of argument in support of, or against, such hearsay exception. That is hardly remarkable. Until some appellate court suggests recognition of the exception, trial lawyers and judges will have no occasion to contemplate its use. The circumstances of this case, however, fit the general outlines of the test of reliability typically required for use of a "residual" hearsay application. The child here was of a very young age such that it is unlikely that the accusation was fabricated or the product of imagination. The statement accusing father of molestation was spontaneous rather than the result of suggestive or leading questioning. Independent evidence was consistent with the statement. The statement was made not once but several times, and its various recitations were consistent. The wording of the statement both in its Spanish terminology and in its use of infantile descriptive words indicate no coaching (description of the penis as a "cucumber"). Other adult males lived in the same household, but no accusation was made against them, which indicates a lack of indiscriminate or random accusations. Finally, there appeared no motive for Carmen to lie or exaggerate in her statements: The evidence was that she loved her father, played with him and, apparently, did not become disaffected from him because of his sexual acts with her.
In short, the circumstances of this case support the conclusion by a trier of fact that Carmen's out-of-court statements are reliable and should be admitted into evidence. The court's admission was therefore not error, even though the ground for admission was not articulated as that we now identify. *922 (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266 ["If the decision of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion...."].)
Our small expedition into new hearsay exception territory should not be taken too broadly. We do not discuss the constitutional issues of right to confrontation and cross-examination raised by the appellant because we believe they have been answered by recent cases. (See Dirk S., supra, 14 Cal. App.4th at pp. 1044-1045; In re Kailee B., supra, 18 Cal. App.4th at p. 726.)[7] These, as is our case, are dependency case authorities. While expansion of a child hearsay exception may well also be appropriate for criminal child abuse cases, we obviously do not reach that subject. Further, although we have discussed the potential of a "residual hearsay" exception, we have no occasion to attempt the broad brush treatment that such rule would imply. We write only to assert the propriety of accepting into evidence the out-of-court statements of very young children for the truth of the content of the statement, given the existence of the factors of reliability discussed above. Assuming the existence of these factors, we affirm that trial courts should not be required to push and twist the facts into old-time hearsay exception rules, such as the spontaneous exclamation exception, the fresh complaint in rape exception, or the statement of mental or physical sensation, but should be able simply to admit and consider such evidence as the "child dependency exception" to the hearsay rule.

DISPOSITION
The judgment is affirmed.
Kremer, P.J. and Work, J., concurred.
A petition for a rehearing was denied October 17, 1994, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 5, 1995. Mosk, J., Kennard, J., and George, J., were of the opinion that the petition should be granted.
NOTES
[1] We are aware of the inclusion in the report prepared by the hospital social worker of a conclusion that Carmen was unable to differentiate between right and wrong. Based on the trial court's ruling and the reasons given therefor, we conclude the court discounted this one stray piece of evidence suggesting lack of witness competency. Deferring to the factfinding prerogative of the trial court, we therefore also do not credit this one piece of evidence.
[2] Appellant's contentions of unreliability appear to be aimed at the Department's report, rather than the report of the hospital worker. Although the Malinda S. rule pertained specifically to Department reports, its reasoning would apply equally to official reports made by hospital workers trained in interviewing children and reporting in an objective manner the results of their investigation. The worker in this case was so trained, was experienced in child interviews, and was able to conduct the interview with Carmen in Spanish.
[3] The author of Comment, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases (1983) 83 Colum. L. Rev. 1745, 1751-1752, makes a persuasive argument in favor of the reliability of children's out-of-court statements. "[T]he victim's out-of-court statements may, in fact, be more trustworthy than his or her in-court testimony. Requiring a child victim to testify in a sex abuse case adversely affects his or her perception and memory and yields poor and unconvincing evidence. The courtroom experience is extremely traumatic and stressful for most children, despite the steps taken to alleviate this problem. Children are frequently subjected to a long and extended series of questions and to hostile attacks on their credibility. The stress is intensified if the victim must face the accused again, or if he or she must testify against a close relative, a situation that often occurs in sex abuse cases. Under these circumstances, children, if they reply at all, often give confused and inaccurate answers." (Footnotes, which contain extensive investigatory backup for these conclusions, are omitted.)
[4] Wash. Rev. Code Ann., section 9A.44.120 (West 1994)
[5] The full text of the statute is:

"`A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, or describing any attempted act of sexual contact with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings ... and criminal proceedings, including juvenile offense adjudications, in the courts of the state of Washington if:
"1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
"2) The child either:
"(a) Testifies at the proceedings; or
"(b) Is unavailable as a witness: Provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
"A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement.'" (2 Myers, op. cit. supra, at p. 266, fn. 796.)
[6] In May 1980 the National Center on Child Abuse and Neglect awarded a grant to the American Bar Association's National Legal Resource Center for Child Advocacy and Protection for the purpose of studying problems associated with the administration of child sexual abuse cases. The result was the creation of the "Child Sexual Abuse Project." This two-year study project resulted in the publication of a booklet entitled "Recommendations for Improving Legal Intervention in Intrafamily Child Sexual Abuse Cases." References to this document will be cited as "Recommendations."
[7] The court in In re Kailee B., supra, 18 Cal. App.4th at page 727, captured the practical difference between constitutional principles as applied to criminal cases versus those appropriate for dependency cases. In a criminal case the issue is the guilt of the defendant, whereas in a dependency case the subject is the well-being of the victim. Getting to the heart of the matter, the court commented that while it may be true that "`it is better that ten guilty persons escape, than that one innocent suffer' (4 Blackstone's Commentaries 358) ... few, if any, would agree it is better that 10 pedophiles be permitted to continue molesting children than that 1 innocent parent be required to attend therapy sessions in order to discover why his infant daughter was falsely making such appalling accusations against him."