KENNARD, J., Concurring.
I agree with most of the plurality’s analysis and conclusions. More specifically, I agree with the plurality that: (1) Hearsay statements by a minor who is the subject of a Welfare and Institutions Code section 300 hearing, and who is incompetent to testify because of an inability to understand the obligation to tell the truth, are admissible under Welfare and Institutions Code section 355 (section 355) when they appear in a social study and are not the product of fraud, deceit, or undue influence; (2) this rule of admissibility does not violate the federal and state Constitutions; and (3) such statements may not form the sole basis *1251 for a jurisdictional finding unless they show special indicia of reliability. I also agree that the evidence in this case was sufficient to support the trial court’s jurisdictional finding, and that the judgment of the Court of Appeal should therefore be affirmed. My disagreement is with the way the plurality applies these rules to this case.
Here, the County of San Diego (County) filed a dependency petition alleging that the minor, Lucero L., fell within the provisions of subdivisions (d) and (j) of section 300 of the Welfare and Institutions Code. Under subdivision (d), a juvenile court may declare a minor to be a dependent of the court if the child “has been sexually abused, or there is a substantial risk that the child will be sexually abused ... by his or her parent or guardian or a member of his or her household . . . .” Under subdivision (j), a juvenile court may declare a minor to be a dependent of the court if “[t]he child’s sibling has been abused . . . and there is a substantial risk that the child will be abused . . . .”
At the contested jurisdictional hearing, the parties stipulated that Lucero, who was then only three and a half years old, was incompetent to testify. To prove the allegations in the dependency petition, the County relied in part on hearsay statements by Lucero that appeared in the social study. But the County also introduced other significant evidence to prove the allegations. Before the hearing, Lucero’s teenage stepsister, Maribel R., had told Liliana Rodriguez, a social worker, that her stepfather Otilio L. (Lucero’s father), had raped Maribel and had fondled her sisters. At the hearing, Maribel refused to discuss the molestation, saying, “I don’t see why I should say what happened to me.” She did, however, testify that she had told Rodriguez the truth. After the noon recess, Maribel recanted this testimony, but the trial court found her recantation unpersuasive. Dr. Constance Dalenberg, a psychologist, testified that if a man had molested his stepdaughter, the likelihood that he would molest his natural daughter rose “by a factor of ten.” Dr. Dalenberg also testified that on one occasion Lucero touched her genitals when Officer Theresa Ramirez questioned her about the molestation, a behavior more commonly observed in children who have actually been molested than with those who make false reports of molestation. Finally, a medical examination of Lucero by Dr. David Sine revealed an anal fissure, which he said could be caused by constipation or abuse.
I agree with the plurality’s conclusion that under section 355 the trial court properly admitted Lucero’s hearsay declarations that appeared in the social study. But the plurality goes on to say that these declarations “possessed sufficient indicia of reliability” to support the trial court’s jurisdictional finding. (Plur. opn., ante, at p. 1249.) This latter step is unnecessary *1252 and a potential source of confusion because, as the plurality acknowledges, trial and appellate courts need only determine whether such indicia of reliability are present when hearsay declarations by a minor who is unable to understand the duty to tell the truth are the sole evidence supporting the trial court’s jurisdictional finding. That is not the case here. As I have explained, the County produced significant other evidence, namely, the testimony of both Lucero’s stepsister Maribel and psychologist Dalenberg and the medical report of Dr. Sine, described above. That other evidence, together with Lucero’s hearsay statements, amply supports the trial court’s jurisdictional finding. This court need not consider whether Lucero’s hearsay declarations would, standing alone, be sufficiently reliable to support that finding, and I do not join the plurality’s dictum on this issue.
Brown, L, concurred.
CHIN, J., Concurring
agree with the plurality’s result. I also agree that the hearsay statements in the social study were admissible and that unreliable and uncorroborated hearsay, alone, would be insufficient to sustain the trial court’s jurisdictional finding. Indeed, any unreliable and uncorroborated evidence, hearsay or otherwise, would be insufficient to sustain a jurisdictional finding. I also agree that sufficient evidence supports the jurisdictional finding of this case.
I reach these conclusions, however, by applying the governing statute, not our own views of what the law should be. In In re Cindy L. (1997) 17 Cal.4th 15 [69 Cal.Rptr.2d 803, 947 P.2d 1340], we had to decide difficult questions in the absence of legislation. In the interim, the Legislature has enacted comprehensive legislation. (Welf. & Inst. Code, § 355 (section 355).) When a statute on point exists, and it is constitutional, as is section 355, we must interpret and apply that statute, not treat our views as the law “notwithstanding” the statute. (Plur. opn., ante, at p. 1247.)
Section 355 was the result of lengthy legislative consideration and compromise. The Enrolled Bill Report recommending the Governor sign the bill that became section 355 aptly describes the bill as “a measured response to the problem of hearsay testimony in Section 300 jurisdictional hearings. On the one hand, juvenile court proceedings, particularly in abuse and neglect cases, are supposed to be informal and to place the best interests of the child ahead of inflexible and ritualistic adherence to ordinary, adversarial trial court procedures. On the other hand, there is widespread belief that hearsay evidence is unreliable and excessive court reliance on the multiple hearsay statements contained in social study reports can lead to injustices. This bill takes a middle road, preserving informality and allowing social studies to *1253 serve as the basis to declare a child a ward of the court while placing reasonable limitations on the use of hearsay evidence when there are reasons to doubt the reliability of the statements in the social study. The author has succeeded in crafting a proposal that social workers, counties, and welfare rights groups all support.” (Legis. Analyst, Enrolled Bill Rep., Sen. Bill No. 86 (1995-1996 Reg. Sess.) Apr. 25, 1996, p. 1, italics added.)
Section 355 is clear and reasonable. The plurality correctly concludes that it makes the hearsay statements in the social study report admissible. It provides that any hearsay statement in that report of “a minor under the age of 12 years who is the subject of the jurisdictional hearing” is admissible unless “the objecting party establishes that the statement is unreliable because it was the product of fraud, deceit, or undue influence.” (§ 355, subd. (c)(1)(B).) In this case, the report’s hearsay statements of Lucero, the approximately three-year-old subject of the jurisdictional hearing, are thus admissible unless the parents establish they are unreliable due to fraud, deceit, or undue influence. The parents did not succeed in doing so. Therefore, the statements are admissible. Section 355’s language admits of no other interpretation.
The plurality is also correct that holding the evidence admissible does not mean that it will always support a jurisdictional finding. Section 355 says two things regarding what evidence will support such a finding. First, section 355, subdivision (a), provides, “Proof by a preponderance of evidence must be adduced to support a finding that the minor is a person described by Section 300.” (Italics added.) Second, it says, by necessary implication, that hearsay in a social study report admissible under section 355, subdivision (c)(1)(B), is “sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based . . . .” (§ 355, subd. (c)(1).) This latter language cannot be read to mean that hearsay will always compel a jurisdictional finding, merely that it can be sufficient if believed. In combination, these two portions of section 355 mean that hearsay evidence admissible under subdivision (c)(1)(B) is sufficient to support a jurisdictional finding if the court finds that it supplies proof by a preponderance of the evidence of that finding.
I do not doubt that evidence, whether hearsay or not, that is unreliable and uncorroborated cannot satisfy the preponderance-of-the-evidence standard. It might also violate due process to base a finding on unreliable and uncorroborated evidence. Ultimately, this case comes down to a simple question of whether substantial evidence supports the trial court’s jurisdictional finding. If not, section 355’s preponderance-of-the-evidence requirement makes it invalid. As with all factual questions, the trial court makes the initial *1254 finding, and reviewing courts review those findings deferentially. (See, e.g., People v. Johnson (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)
Here the evidence, as a whole, was sufficient to support the trial court’s findings. I would rely on all the evidence, some of which indicates Lucero’s statements are reliable, and some of which corroborates those statements. We need not, and should not, establish rigid rules or divide the types of evidence into categories to be analyzed separately. There was no evidence Lucero had a motive to lie, and she consistently used age-appropriate terminology. Corroboration included the evidence of similar molestation of Lucero’s half sister, together with the expert testimony regarding the significance of this evidence, and the medical evidence that Lucero had “an anal fissure, which could be caused by constipation or abuse.” (Plur. opn., ante, at p. 1234.) A three year old does not normally have an anal fissure or constipation. The fissure could be coincidence, but this is corroborative evidence—not conclusive but significant—that neither we nor the trial court should ignore.
The plurality correctly finds section 355 constitutional. This is not a criminal prosecution, with all its attendant due process and confrontational rights, but a child dependency proceeding, the purpose of which is “ ‘not to prosecute a parent, but to protect the child.’ ” (In re Malinda S. (1990) 51 Cal.3d 368, 384 [272 Cal.Rptr. 787, 795 P.2d 1244], italics added.) The need to protect the child is especially compelling in this situation. If a parent abuses a particularly young child in private and leaves no physical marks, two common scenarios, the child cannot be protected if the trial court does not consider and act on his or her hearsay statements. To be sure, “a parent has substantial private interests at stake” in this proceeding and thus has due process rights. (Id. at p. 383.) But the parents here received all the process due them.
Section 355 is a balanced statute, giving the parents substantial rights while allowing children to be protected as fully as possible. It specifically allows any party “to introduce admissible evidence relevant to the weight of the hearsay evidence or the credibility of the hearsay declarant.” (§ 355, subd. (d).) The parents here took full advantage of this provision. As the Court of Appeal summarized, “Yolanda and Otilio exercised their right to challenge the reliability of Lucero’s hearsay statements by cross-examining the persons to whom she made them, including Maribel and Social Worker Rodriguez. Yolanda also cross-examined the foster mother and Investigator Shamsky and successfully sought Shamsky’s notes from her interview with Maribel. Otilio called Dr. Weinstein as an expert witness in an attempt to *1255 show Lucero’s statements were unreliable and both parents cross-examined respondent’s expert, Dr. [Dalenberg], on this subject.”
The statute excludes hearsay statements if the parents can show they are unreliable due to fraud, deceit, or undue influence. In essence, the Legislature has determined that statements by a child such as those in this case are likely to be reliable absent fraud, deceit, or undue influence. The Legislature clearly was concerned that a young child can easily be influenced. Evidence of such influence can cast serious doubt on the reliability of a young child’s statements. If an adult or other person with access to the child stands to gain from accusations of abuse, the court should closely examine that circumstance. But the Legislature can validly place great weight on the absence of any apparent reason for the child to lie or source for the statements other than the child’s actual experience. Without evidence of fraud, deceit, or undue influence, the Legislature might well doubt that a three-year-old like Lucero would falsely state these things about her parent.
Contrary to the plurality’s view (plur. opn., ante, at p. 1245), the burden of proving fraud, deceit, or undue influence is not especially difficult; a parent can prove it when it exists. A typical situation in which undue influence might exist occurs when there is a marriage dissolution or child custody contest. One parent might try to induce the child to accuse the other of misconduct. The accused parent may fully explore that motivation and that possibility. Here, the mother appears to be protecting the father, not exercising undue influence to accuse the father. Moreover, the parents were fully allowed to explore the possibility that Lucero’s statements were the product of Maribel’s undue influence. They do not suggest any other possible source of fraud, deceit, or undue influence.
I also disagree that any “due process problem is compounded in the case of a child who has been determined to be incompetent to distinguish between truth and falsehood.” (Plur. opn., ante, at p. 1246.) This determination does not itself weigh “against the reliability of the child’s out-of-court statement.” (Ibid.) I am aware of no empirical evidence, or reason in logic, to conclude that a three year old who cannot articulate the difference between truth and falsehood is more likely to lie than an eight year old who can. A three year old would probably respond with a blank stare if asked about the duty to tell the truth or the difference between truth and falsehood, yet be fully capable of expressing him- or herself sufficiently to be understood and, in the absence of fraud, deceit, or undue influence, of telling the truth. “ ‘A young child generally does not understand abstract concepts such as duty, truth, or lie. The fact that a child is incompetent to testify at trial . . . does not necessarily mean that the child is unable to state the truth.’ ” (In re Cindy L., *1256 supra, 17 Cal.4th at p. 33.) “[Contemporary psychological research affirms a young child’s capacity to tell the truth. [Citation.] There is no logical reason for denying admission of out-of-court statements that circumstances indicate originate from a child’s ‘rooted ingenuousness’ merely because he or she appears unable to understand, in the abstract, the duty to tell the truth.” (Id. at pp. 34-35.)
Children able to express themselves but too young to testify are precisely those most in need of the protection that section 355 provides. They can express themselves; they can tell truthfully what is happening to them; they can, in this limited way, try to protect themselves. But then others must listen to what they say. “Historical analyses of the arcane judicial rules concerning hearsay and competency that have developed over the centuries in cases involving adults, whether civil or criminal in nature, are of little assistance in proceedings designed only to determine how best to safeguard the welfare of children of extremely tender years. Such children may be totally incapable of treating with the abstractions that underlie testimonial competency, yet are quite capable of observing and reporting on specific events to which they are privy.” (In re Kailee B. (1993) 18 Cal.App.4th 719, 725 [22 Cal.Rptr.2d 485].)
The assumption that a child too young to testify is more likely to lie than an older child is the opposite of the rationale of In re Carmen O. (1994) 28 Cal.App.4th 908 [33 Cal.Rptr.2d 848], the pioneering decision in this area. That case described the circumstances showing that a statement was reliable. The first circumstance was this: “The child here was of a very young age such that it is unlikely that the accusation was fabricated or the product of imagination.” (Id. at p. 921, italics added, quoted in In re Cindy L., supra, 17 Cal.4th at p. 24.) We need not conclude that statements by a very young child are more reliable than those by an older person, but we should not reverse the rationale of Carmen O. and, in apparent defiance of -the Legislature, conclude the opposite without any supporting evidence or rationale.
The competing interests the Legislature balanced in enacting section 355 are both important; a parent has important interests at stake, but so too does the child and the state as parens patriae. Although a jurisdictional finding under section 355 has important consequences, it does not itself terminate parental rights. (See In re Malinda S., supra, 51 Cal.3d at pp. 383-394.) On the other hand, a finding of no jurisdiction withdraws any protection the court may give to a child. Government can do few things more harmful than turn a deaf ear to an abused child’s plea for help and return that child for more abuse. Abuse can scar a child emotionally and, depending on its nature, physically for life. For good reason, we have stated that “Children, too, have *1257 fundamental rights—including the fundamental right to be protected from neglect” and, I assume, abuse. (In re Jasmon O. (1994) 8 Cal.4th 398, 419 [33 Cal.Rptr.2d 85, 878 P.2d 1297].) The high court has stressed that a “State’s interest in ‘the protection of minor victims of sex crimes from further trauma and embarrassment’ is a ‘compelling’ one”; and that “ ‘ “[i]t is evident beyond the need for elaboration that a State’s interest in ‘safeguarding the physical and psychological well-being of a minor’ is ‘compelling.’ ” ’ ” (Maryland v. Craig (1990) 497 U.S. 836, 852-853 [110 S.Ct. 3157, 3167, 111 L.Ed.2d 666].)
The state certainly has a strong “interest in producing ‘an accurate and just resolution’ of dependency proceedings.” (Plur. opn., ante, at p. 1247.) But this observation cuts both ways. Although the parent has an interest in avoiding an erroneous finding of jurisdiction, the child—and, accordingly, the court—has at least as important an interest in avoiding erroneous findings of no jurisdiction. The Legislature has thoughtfully addressed this question; we should give effect to its solution. Children must be protected, too; they have rights, too.
Baxter, J., concurred.