[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1346 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1347 
OPINION
Appellant Manuel M. appeals from the juvenile court's dispositional order removing his 15-year-old daughter, Nemis M., from parental custody based upon the court's finding that his 18-year-old son, Manuel, Jr.,[1] had sexually molested Nemis and that he and her mother had failed to adequately protect Nemis from such abuse within the meaning of Welfare and Institutions Code section 300, subdivisions (b) and (d).[2] Appellant contends that hearsay statements made by Nemis, who was found incompetent to testify at the hearing, should have been excluded and without such statements, there is no evidence supporting the court's findings. He also contends the court erred by wrongfully entering a default against him. (1) (See fn. 3.) We conclude prejudicial error occurred in the proceedings and reverse.[3]
 FACTUAL AND PROCEDURAL HISTORY
On June 22, 1995, a petition was filed in the juvenile court alleging in count I that "on more than one occasion, [minor Nemis M.'s] brother, Manuel Jr., sexually abused minor, including but not limited to sexual intercourse. Further, minor's parents have failed to take action to protect minor."
Nemis is developmentally delayed. She is described by social workers as severely emotionally disturbed, mildly retarded, and communicatively handicapped. Nemis also has been diagnosed with attention deficit disorder by her psychiatrist. She has various behavioral problems, such as yelling, swearing, hitting people and throwing things, which are perhaps attributable to Tourette's syndrome. Nemis is unable to read or write and is speech impaired. She attends the Speech and Language Development Center in Buena Park.
The adjudication began on August 1, 1995, with both parents present with their respective counsel. A number of attempts were made to qualify Nemis as a witness. Nemis was first questioned by the court and counsel in chambers with the assistance of her teacher, James Martin. Nemis was urged *Page 1349 
to answer out loud, but continued to nod her head in response to questions instead of saying "yes" or "no," or she gave no response at all. A break in questioning was taken and when they resumed, Nemis was still virtually nonresponsive. After another break, they tried again. This time the court and counsel were introduced to Nemis by their first names and she said "hi" to each. Nemis was then shown a picture and asked if it showed a lady swimming, Nemis said, "Yes." When asked if the same picture showed the lady riding a bike, Nemis said, "Yes." Then Nemis became nonresponsive once again and the court recessed the case.
Four days later, another unsuccessful attempt was made to qualify Nemis as a witness. Based upon its observations of Nemis, the court ruled that Nemis was not competent to testify as a witness. The court found that Nemis "does not understand the difference between telling the truth and telling a lie. Nor does she understand or have the ability to recount events." The court was not able to determine whether Nemis's inability to respond was because she was intimidated by the people around her or the formality of the court proceedings.[4] The court subsequently ruled that a pretrial resolution conference (PRC) report containing Nemis's statements was admissible.
Prior to ruling the minor's statements admissible, Nemis's teacher, James Martin, testified that he had been employed at Nemis's school for four years and worked with her for two years. He believed that Nemis acts out when her brother is in the house although she also acts out for other reasons. In October or November 1994, he was having difficulty handling Nemis. Thus, he called Nemis's mother and asked her if Manuel, Jr., had been in the house. Her mother did not state that Manuel had been in the house but replied, "Well, he's my son. What do you expect me to do?" Once, in the beginning of May 1995, Nemis told Mr. Martinthat her brother was in the home.[5] Nemis had been acting out at least twice a month prior to June 13, 1995. On another occasion, Nemis had revealed to Mr. Martin that she had seen her brother. Mr. Martin asked Nemis how her brother got in the house. Nemis replied, "Well, he has a key and he comes in at night."
Mr. Martin had group discussions with his class, including Nemis, about the importance of being honest, and he had never caught her in a lie. *Page 1350 
Monica Rodriguez was Nemis's speech and language teacher. She testified that in June 1995, Nemis asked to speak to her. When Ms. Rodriguez asked Nemis what she wanted to talk about, Nemissaid that her brother had touched her. Ms. Rodriguez asked Nemis where and Nemis pointed to her private area. Then Nemis said she did not want to talk anymore. The matter was reported to the sheriff's department.
Deputy A. Herrera responded to the school on June 13, 1995. She did not testify; however, her police report was attached to the PRC report. Deputy Herrera reported that she contacted a counselor at the school who is referred to in Herrera's report as an "informant." The informant told Herrera that she has a very good rapport with Nemis and that it took two hours for Nemis to relate her story. Nemis said her brother, Manuel, touched herprivate parts, pointing to her breasts and vagina. Nemispointed to a penis on a diagram of a boy and said "he hurt me"pointing to her vaginal area. Nemis also told the informantthat it hurt and she bled. Nemis said it happened Saturday
(June 10, 1995) night in her bedroom while her parents wereasleep. Deputy Herrera tried to interview Nemis without success. She transported Nemis to the police station and tried to get Nemis to provide her with details of the sexual assault. Nemis just kept saying, "Manuel hurt me" pointing to a penis on thediagram of a boy.
Kimberly Maddock testified that she was employed by the Orange County Children Services, Child Abuse Service Team. She had special training in interviewing children for sexual abuse investigations and in assessing the reliability of their statements. Ms. Maddock interviewed Nemis at her school on June 13, 1995. Because Nemis was difficult to interview, Ms. Maddock used a technique of asking Nemis basically the same questions in different ways, so that she could figure out what Nemis was saying. Nemis's answers were always consistent. During their interview, Nemis's affect matched what she was talking about. Nemis was visibly upset and had difficulty in expressing what happened to her which led Ms. Maddock to believe her. Ms. Maddock also spoke to Nemis's mother, who told her that Nemis did not make up stories. Ms. Maddock did not testify as to Nemis's statement. She made notes of her interview, which were attached to the PRC report.
According to Ms. Maddock's narrative in the PRC report, "After approximately one hour with the use of male and female pictures, minor [Nemis] stated that her brother Manuel, who has a key toher room and comes and goes and mother knows, minor disclosedthat last Saturday, 6/10/95, her brother touched her lips withhis lips, her breasts with his hand, her vagina with his hand andhis penis. Minor stated it hurt. Minor stated brother put lotionon his penis and put his penis inside of her, brother did not putlotion *Page 1351 inside minor. Minor stated that mother was at home when incidentoccurred and mother knew about the incident."
Another note in the PRC report states that on June 20, 1995, Nemis also disclosed to Children's Social Worker Whan that herbrother Manuel "`touched'" her and it "`hurt.'" She pointed to asketch of a male and put her finger on the male genital, then puther hand on her genital area. Nemis pointed out a bottle of Jergen's lotion in the bathroom medicine cabinet as the lotion her brother had used. When asked where her mother was, Nemis said, "`sleep.'"
A medical examination of Nemis on June 27 revealed no abnormal findings consistent with sexual intercourse.
Appellant and Nemis's mother, Vickie M., both testified at the hearing pursuant to Evidence Code section 776 Appellant is a security guard who works from 8 p.m. to 5 a.m. five days a week. Nemis's mother does not work outside the home. Both parents testified that Manuel, Jr., has not lived at home for three months, has no key to the house, and is not permitted to spend the night. Nemis never told either parent that Manuel, Jr., had sexually abused her. About a year earlier, Nemis told her mother that her cousin had sexually touched her and about three years earlier they had received a school report that Manuel, Jr., had molested Nemis. When questioned about it at that time, Nemis said it was not true. When appellant asked Nemis why she said it happened, she did not have an answer. Manuel, Jr., denied the allegation. Appellant did not believe the allegation because the children were never left alone.
On the fifth day of trial, August 14, 1995, the parents left the courthouse without permission. The court ordered the attorneys to notify the parents to appear in court the following day to show good cause why the court should not proceed against them by default. On August 15, the parents appeared in court. Appellant explained he had experienced chest pains the day before, there was nobody "out there [in the hall] to talk to" and he had his wife drive him home. The case was then trailed to August 17. On that date, appellant was on the courthouse premises but did not wish to be present in the courtroom because he was emotionally upset. The court proceeded by way of default against appellant over his attorney's objection.
Appellant's counsel also objected to the admission of the PRC report on the ground that there was no information with respect to Nemis's developmental delays and whether her statements in the report qualified for *Page 1352 
admission. The court received the PRC report and all of the testimony against the father.[6]
The court found the minor to be a person described by sections 300, subdivisions (b) and (d). The court amended count I of the petition based on its finding that "on at least one occasion minor's 18 year old brother engaged in sexually inappropriate conduct with the minor including but not limited to touching her in her vagina area. . . . [¶] While the parents had previously restricted brother's access to the home, they were unable to protect the minor from contact with him." The case was continued to September 12 for a contested disposition as to the mother. However, over counsel's objection, the court proceeded to an immediate dispositional hearing as to appellant. The court declared Nemis a dependent of the court and ordered her custody taken from the parents. Nemis was suitably placed in a foster home. Family reunification services were ordered for father which required father to participate in individual and conjoint counseling and required his visits with Nemis to be monitored.
 DISCUSSION I. Default Judgment (2) Appellant contends the court wrongfully entered a default against him. We find this contention meritorious. A parent who is ordered to appear in court and who willfully fails to appear is in contempt not "in default." "Entry of default is not authorized where an answer is on file, even if the defendant fails to appear at the hearing. [Citations.]" (In re Brian W. (1996) 48 Cal.App.4th 429, 433, fn. 3 [56 Cal.Rptr.2d 1]; see also § 213.) "The consequences of a parent's failure to appear at a scheduled hearing . . . do not include the deprivation of the due process right to confront and cross-examine witnesses." (In re Dolly D. (1995) 41 Cal.App.4th 440, 446 [48 Cal.Rptr.2d 691].) Furthermore, subdivision (c) of section 350 provides that if the petitioner has met its burden of proof and the petition is not dismissed, "the minor, parent, or guardian may offer evidence without first having reserved that right."[7] Thus, a limitation on the parent's right to present witnesses is equally unauthorized. *Page 1353 
For the reasons set forth in part II, post, we cannot conclude this error was harmless.
 II. The Minor's Competency
Appellant also contends the court erred in admitting various hearsay statements by Nemis contained in the social study after finding that she was incompetent to testify as a witness. (3)
The Supreme Court held in In re Malinda S. (1990) 51 Cal.3d 368, 382 [272 Cal.Rptr. 787, 795 P.2d 1244], that a social study report is admissible in a dependency hearing even where it includes multiple levels of hearsay. The report may be relied upon in determining whether a minor falls within the court's jurisdiction because the parties' due process rights are protected by procedures in which each party (1) receives a copy of the report, (2) is given an opportunity to cross-examine the investigative officer and to subpoena and examine persons whosehearsay statements are contained in the report, and (3) is permitted to introduce rebuttal evidence.
(4) When the hearsay declarant is not competent to testify at the jurisdictional hearing because he or she does not have the ability to distinguish between truth and falsity, the declarant's statements are inadmissible absent a showing that the declarant had the ability to differentiate between truth and falsehood at the time the statements were uttered. (In re Basilio T. (1992)4 Cal.App.4th 155, 166-167 [5 Cal.Rptr.2d 450].) "In effect, the court in Basilio T. created a nonstatutory rebuttablepresumption arising from a determination of a child's incompetency to testify." (In re Daniel Z. (1992) 10 Cal.App.4th 1009, 1019 [13 Cal.Rptr.2d 139], original italics.) "This means that once the presumption arises, the judge must assume earlier incompetency unless and until evidence is introduced which would support a finding of competency, in which event the judge determines competency without regard to the presumption. (Evid. Code, § 604.)" (In re Daniel Z., supra, at p. 1019.) (5) According to Basilio T., "[t]he only recognized exceptions to the rule that a hearsay declarant must be competent when an out-of-court statement is made are the excited utterance exception and the exception for fresh complaint of rape. [Citation.]" (In re Basilio T., supra, at pp. 166-167.)[8]
(6) Two years after its decision in Basilio T., the court recognized an additional hearsay exception in In re Carmen O.
(1994) 28 Cal.App.4th 908, *Page 1354 
921 [33 Cal.Rptr.2d 848], which it called the "child dependency hearsay exception." There, the reason for the minor's incompetency was not the inability to distinguish between truth and falsity, but was probably the result of fear generated by the formality of the proceedings. (Id. at pp. 913-914.) The court looked to a number of factors to determine if the minor's statements were reliable at the time they were made. These factors include (a) whether the minor is very young such that it is unlikely that the accusation was fabricated or the product of imagination, (b) the spontaneity of the accusation reflecting it was not the result of suggestive or leading questioning, (c) the existence of independent evidence consistent with the accusation, (d) whether the various recitations of the statement were consistent, (e) whether the wording of the statement reflects a lack of coaching, (f) the absence of accusations against other males with whom the minor comes into contact, and (g) the absence of a motive to lie or exaggerate. (Id. at p. 921.)[9]
We apply the foregoing factors to the present case. To these factors, we add the prerequisites of competency set forth inBasilio T.: namely, whether the minor has the ability to differentiate between truth and falsehood, the capacity to observe, sufficient intelligence, adequate memory, the ability to communicate, and an appreciation of the obligation to speak the truth. (In re Basilio T., supra, 4 Cal.App.4th at p. 167, fn. 7.)
In favor of admissibility is the fact that Nemis's "fresh complaint" to Ms. Rodriguez, while lacking the reliability of a spontaneous utterance, does not appear to be the result of suggestive or leading questions. Thereafter, Nemis's recitations were consistent and her teachers and a skilled social worker believed Nemis had the ability to differentiate between truth and falsehood. The factors against admissibility are that, at 15 years of age, Nemis was old enough to fabricate or imagine the accusation of molestation, the medical evidence was inconsistent with her accusation of sexual intercourse, she had made unsubstantiated accusations against a cousin and her brother in the past, and her intelligence and ability to communicate were *Page 1355 
extremely limited.[10] We do not know from this record whether Nemis's more explicit description of her brother's alleged behavior was a result of suggestive or leading questions, whether she was coached, and whether she had a motive to lie or exaggerate.
(7) The court made no specific finding of competency in terms of Nemis's precourt statements. However, by admitting her statements into evidence, the court, by implication, determined that Nemis was at these prior times competent. (In re Carmen O.,supra, 28 Cal.App.4th at p. 914.) "A trial court's determination concerning a witness's competency will not be reversed on appeal absent an abuse of discretion. [Citation.]" (In re Basilio T., supra, 4 Cal.App.4th at p. 166.) In this case, the court did not have all of the evidence upon which to exercise its discretion. After appellant was declared "in default," Kimberly Maddock, who had spent an hour utilizing a variety of techniques to obtain the most definitive of Nemis's statements, testified without cross-examination by appellant's attorney. Appellant had previously indicated he had two witnesses. They were not called. We do not know whether these witnesses would have cast light on Nemis's competency at the time she was questioned.
Under these circumstances, we cannot conclude beyond a reasonable doubt that the court's entrance of a default against appellant and its reliance upon the minor's statements in the social study were harmless errors. (See In re Amy M. (1991)232 Cal.App.3d 849, 867-868 [283 Cal.Rptr. 788]; In re Dolly D.,supra, 41 Cal.App.4th at p. 446.)
 DISPOSITION
The jurisdictional and dispositional orders are reversed and the cause is remanded with directions to the juvenile court to conduct further proceedings, and receive such additional evidence as the court may deem necessary to determine whether Nemis was capable of understanding the duty to tell the truth at the time she made the hearsay statements contained in the social study reports, and, if so, whether her statements bear the indicia of reliability prerequisite to their admissibility under the "child dependency exception" to the hearsay rule. If the court determines that Nemis understood the duty to tell the truth and her statements are otherwise reliable, the court shall proceed with the jurisdictional hearing. If the court determines that Nemis was not competent or that the statements do not meet the test of reliability, *Page 1356 
our judgment shall remain, as to this appellant, an unqualified reversal. (See In re Daniel Z., supra, 10 Cal.App.4th at p. 1023.)
Vogel (C.S.), P.J., and Epstein, J., concurred.
Respondent's petition for review by the Supreme Court was denied February 19, 1997.
[1] Manuel, Jr., is actually Manuel the III.
[2] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[3] Nemis's mother has not filed an appeal in this case. Thus, any errors that might have accrued to her benefit are waived. Respondent Department of Children and Family Services informed us that it will not be filing a brief in this appeal. Accordingly, we accept the factual recitation of appellant's brief as true but adhere to the requirement that appellant must affirmatively demonstrate prejudicial error despite the absence of a brief by respondent. (County of Lake v. Antoni (1993) 18 Cal.App.4th 1102, 1104 [22 Cal.Rptr.2d 804].)
[4] In the words of the court, "Nemis appears to be unable to articulate the difference between the truth and a lie; and, also, to articulate the ability to recount events. [¶] There is insufficient information from Nemis for the court to offer any opinion as to why she was unable to do that, but from the direct observations of her in chambers, she appeared to not be able to understand what was being asked of her. . . . [¶] The only thing that the court can presume from her testimony alone, or from her attempted testimony, is that she does not understand the difference between telling the truth and telling a lie. Nor does she understand or have the ability to recount events. That's based solely on the observations of Nemis in chambers, not on any other testimony."
[5] For ease in analysis, all out-of-court statements attributed to Nemis are in italics.
[6] Both parents' counsel had asked the court to appoint an expert pursuant to Evidence Code section 730 to determine the impact of Nemis's developmental disabilities on her competence to testify, her ability to communicate, and whether the statements attributable to Nemis in the PRC report qualified for admission into evidence.
[7] Parents have the right to use the process of the court to compel the attendance of witnesses. (Cal. Rules of Court, rule 1449(b)(4).)
[8] We agree with the Basilio T., conclusion regarding the excited utterance exception because "[t]he spontaneity of the declarations lend credibility to the exclamations of a hearsay declarant who might be otherwise incompetent, due to minority or other valid reasons, to testify at trial." (People v. Butler
(1967) 249 Cal.App.2d 799, 807 [57 Cal.Rptr. 798].) We part company with Basilio T. when it comes to the "fresh complaint" doctrine. A "fresh complaint" is open to fabrication and has no inherent reliability. Its raison d'etre is to forestall the assumption the offense did not occur because no complaint was made. It is our view that competency of the declarant is foundational to admissibility of a "fresh complaint."
[9] In In re Cindy L. (1996) 47 Cal.App.4th 509
[54 Cal.Rptr.2d 717] review granted October 16, 1996 (S055368), we concluded that the child dependency hearing exception is not subject to a per se requirement of competence. In our view, the statements at issue here were not sufficiently akin to spontaneous statements or excited utterances to fall within the holding of Cindy L. Because the Supreme Court has granted review in that case, it does not figure in our analysis.
[10] Nemis was variously described in the reports as "severely" to "mildly" retarded. We noted previously that appellant's counsel persistently requested the appointment of an expert to assist in the determination of Nemis's competency. The record fails to reflect why such an appointment was not made. *Page 1357