[No. C043514. Third Dist. Nov. 10, 2003.]

In re CHRISTOPHER M., a Person Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
TAKISHA M. et al., Defendants;
ALBERT G., Movant and Appellant.

**COUNSEL**

Roland Simoncini, under appointment by the Court of Appeal, for Movant and Appellant.

Robert A. Ryan, Jr., County Counsel, and Karla Kowalcyk, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**DAVIS, J.**—Appellant Alber G., the alleged father of the minor, Christopher M., appeals from the juvenile court's order terminating his parental rights.

(Welf. & Inst. Code, §§ 366.26, 395.)[1] Appellant contends the juvenile court erroneously denied him a contested 366.26 hearing. He also contends he was prejudiced by the juvenile court's failure to follow the statutory procedures for determining paternity. Appellant is mistaken. His right to assert a position regarding his paternal status did not entitle him to a contested 366.26 hearing. And because the minor's paternity had already been established by a voluntary declaration of paternity, the court did not have to give appellant the notice and form provided for in section 316.2. We will affirm the juvenile court's order.

FACTS AND PROCEDURAL HISTORY

A dependency petition was filed in February 2002 concerning the newborn minor, alleging that the minor tested positive for "THC/marijuana" at birth, the mother had tested positive for cocaine during her pregnancy, and the mother had failed to reunify with five other children as a result of her substance abuse. The mother named Roger D. as the minor's father, and he was named as such in the petition. Roger D. informed the social worker that he was present at the minor's birth and had signed a declaration of paternity.

Shortly after the detention hearing, appellant informed the social worker that he was possibly the minor's father. According to appellant, "he had . . . sexual relations with the mother on two occasions," and he "found out about the baby in September." Regarding the allegations in the petition, appellant made the following statements: " 'I think that kid needs to be placed somewhere. I can't really comment on that. . . . I'm in a big old mess. . . . [¶] . . . I feel that she should have never had no kids. If she wasn't able to take care of them [sic]. I'm not knowing what's going on. I'm really here because her mother said go get my son.' "

Appellant appeared at the next court hearing in the matter. The juvenile court directed that appellant and Roger D. be provided "with packets to assist them in establishing paternity." The matter was continued approximately one week for a pretrial hearing, with a jurisdictional hearing scheduled one week later.

By the next hearing, a declaration of paternity, which was executed the day after the minor's birth, had been filed with the juvenile court. Based thereon, the court found Roger D. to be the minor's presumed father. Appellant was not present at the hearing.

The jurisdictional hearing was continued numerous times. In July 2002, the juvenile court sustained the petition. A contested dispositional hearing occurred in August and September 2002, at which the juvenile court denied

---

[1] Further undesignated section references are to the Welfare and Institutions Code.

reunification services and set a hearing to select and implement a permanent plan for the minor pursuant to section 366.26. Appellant did not appear at any of these hearings.

The minor was placed with two siblings in a prospective adoptive home, and the social worker opined that the likelihood of adoption was "excellent" if parental rights were terminated.

In November 2002, appellant filed a petition for modification requesting an order for paternity testing and, if he was determined to be the father, that the minor be placed with him. (§ 388.)

The hearing on appellant's petition for modification was set on the same date as the section 366.26 hearing. At the hearing, the juvenile court denied appellant an evidentiary hearing on his petition. The court noted that the issue of paternity had been raised 10 months earlier and was resolved by the declaration of paternity signed by the mother and Roger D.

The juvenile court then proceeded to the section 366.26 hearing. The court noted appellant's objection to the termination of his parental rights and found that, although appellant had a right to notice and to attend the hearing, he was not entitled to a contested hearing. Finding the minor was likely to be adopted, the juvenile court terminated parental rights and ordered a permanent plan of adoption.

DISCUSSION

I

Appellant claims his due process rights were violated when the juvenile court denied his request for a contested section 366.26 hearing. We disagree.

"The extent to which a father may participate in dependency proceedings and his rights in those proceedings are dependent on his paternal status." (*In re Paul H.* (2003) 111 Cal.App.4th 753, 760 [5 Cal.Rptr.3d 1], italics omitted.) "An alleged biological father in dependency proceedings is a man who may be the father of a child, but whose biological paternity has not been established." (*In re Joseph G.* (2000) 83 Cal.App.4th 712, 715 [99 Cal.Rptr.2d 915].) "Alleged fathers have less rights in dependency proceedings than biological and presumed fathers. [Citation.] An alleged father does not have a current interest in a child because his paternity has not yet been established. [Citation.]" (*In re O. S.* (2002) 102 Cal.App.4th 1402, 1406 [126 Cal.Rptr.2d 571].) Thus, for example, "an alleged father is not entitled to appointed counsel or reunification services. [Citations.]" (*In re Paul H.,*

*supra*, 111 Cal.App. 4th at p. 760.) Due process for an alleged father requires only that he "be given notice and 'an opportunity to appear and assert a position and attempt to change his paternity status. [Citations.]' " (*Ibid.*)

■ Appellant's right to assert a position did not entitle him to a contested section 366.26 hearing. Unless and until appellant was able to elevate his status to that of a biological or presumed father, the only issues on which he was entitled to assert a position concerned his paternal status and his intent and desires regarding the minor if his paternal status became more than just a potentiality.

However, "the sole purpose of the section 366.26 hearing is to select and implement one of the listed permanent plans." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 304 [19 Cal.Rptr.2d 544, 851 P.2d 826].) As an alleged father, appellant did "not have a current interest" in the issues that were before the juvenile court at that hearing—whether the minor was adoptable and whether any exceptions to adoption applied. (*In re O. S., supra,* 102 Cal.App.4th at p. 1406.) Neither reunification nor paternity is an issue before the juvenile court at the section 366.26 hearing. (*In re Marilyn H., supra,* 5 Cal.4th at p. 304; *In re Ninfa S.* (1998) 62 Cal.App.4th 808, 811 [73 Cal.Rptr.2d 209].)

Appellant claims he had "fundamental liberty interests . . . at stake" at the hearing, implicating his due process rights. However, even a *biological* father's "desire to establish a personal relationship with a child, without more, is not a fundamental liberty interest protected by the due process clause." (*In re Kiana A.* (2001) 93 Cal.App.4th 1109, 1114 [113 Cal.Rptr.2d 669].) " 'Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring.' [Citation.]" (*Lehr v. Robertson* (1983) 463 U.S. 248, 260 [77 L.Ed.2d 614, 103 S.Ct. 2985], italics omitted.) Even less compelling is the liberty interest of an *alleged* father who has made no effort to establish a relationship with the subject child.

In support of his contention, appellant cites cases involving the denial of a contested hearing to the mother (*In re Stacy T.* (1997) 52 Cal.App.4th 1415 [61 Cal.Rptr.2d 319]; *In re Tamika T.* (2002) 97 Cal.App.4th 1114 [118 Cal.Rptr.2d 873]) or to a father whose paternity was not disputed (*In re Dolly D.* (1995) 41 Cal.App.4th 440 [48 Cal.Rptr.2d 691]; *In re Nemis M.* (1996) 50 Cal.App.4th 1344 [58 Cal.Rptr.2d 324]; *In re Jeanette V.* (1998) 68 Cal.App.4th 811 [80 Cal.Rptr.2d 534]). Needless to say, the due process rights of parents whose connection to a child has been established are distinguishable from those of an individual whose connection remains only a possibility.

Appellant also complains he was entitled to receive the social worker's section 366.26 report 10 days before the hearing and that, because he did not receive the report in a timely fashion, he was unable to prepare to cross-examine the social worker. Appellant was provided a copy of the report at the section 366.26 hearing. After receiving the report, appellant did not object to the lack of timeliness, thereby waiving the issue. (See *In re Christopher B.* (1996) 43 Cal.App.4th 551, 558 [51 Cal.Rptr.2d 43].) Furthermore, our conclusion that appellant was not entitled to a contested hearing leads to the related conclusion that he was not prejudiced by his inability to prepare to cross-examine the social worker.

## II

Next, appellant claims the juvenile court failed to comply with the statutory procedures for determining paternity. We disagree.

Appellant's contention rests on the provisions of section 316.2. Subdivision (a) of that section requires the juvenile court to conduct an inquiry "as to the identity and address of all presumed or alleged fathers."[2] However, the

---

[2] Section 316.2 provides:

"(a) At the detention hearing, or as soon thereafter as practicable, the court shall inquire of the mother and any other appropriate person as to the identity and address of all presumed or alleged fathers. The presence at the hearing of a man claiming to be the father shall not relieve the court of its duty of inquiry. The inquiry shall include at least all of the following, as the court deems appropriate:

"(1) Whether a judgment of paternity already exists.

"(2) Whether the mother was married or believed she was married at the time of conception of the child or at any time thereafter.

"(3) Whether the mother was cohabiting with a man at the time of conception or birth of the child.

"(4) Whether the mother has received support payments or promises of support with respect to the child or in connection with her pregnancy.

"(5) Whether any man has formally or informally acknowledged or declared his possible paternity of the child, including by.signing a voluntary declaration of paternity.

"(6) Whether paternity tests have been administered and the results, if any.

"(7) Whether any man otherwise qualifies as a presumed father pursuant to Section 7611, or any other provision, of the Family Code.

"(b) If, after the court inquiry, one or more men are identified as an alleged father, each alleged father shall be provided notice at his last and usual place of abode by certified mail return receipt requested alleging that he is or could be the father of the child. The notice shall state that the child is the subject of proceedings under Section 300 and that the proceedings could result in the termination of parental rights and adoption of the child. Judicial Council form Paternity—Waiver of Rights (JV-505) shall be included with the notice. Nothing in this section shall preclude a court from terminating a father's parental rights even if an action has been filed under Section 7630 or 7631 of the Family Code.

"(c) The court may determine that the failure of an alleged father to return the certified mail receipt is not good cause to continue a hearing pursuant to Section 355, 358, 360, 366.21, or 366.22.

juvenile court's duty in this regard arises only *"if [parentage has] not otherwise [been] determined."* (Cal. Rules of Court, rule 1413(a), italics added.)[3]

---

"(d) If a man appears in the dependency action and files an action under Section 7630 or 7631 of the Family Code, the court shall determine if he is the father."

"(e) After a petition has been filed to declare a child a dependent of the court, and until the time that the petition is dismissed, dependency is terminated, or parental rights are terminated pursuant to Section 366.26 or proceedings are commenced under Part 4 (commencing with Section 7800) of Division 12 of the Family Code, the juvenile court which has jurisdiction of the dependency action shall have exclusive jurisdiction to hear an action filed under Section 7630 or 7631 of the Family Code.

"(f) After any inquiry, proceeding, or determination made pursuant to this section, the juvenile court shall note its findings in the minutes of the court."

[3] Further undesignated rule references are to the California Rules of Court. Rule 1413 provides:

"(a) The juvenile court has a duty to inquire about and, if not otherwise determined, to attempt to determine the parentage of each child who is the subject of a petition filed under section 300, 601, or 602 [of the Welfare and Institutions Code]. The court may establish and enter a judgment of paternity.

"(b) At the initial hearing on a petition filed under [Welfare and Institutions Code] section 300, 601, or 602, and at hearings thereafter until or unless paternity has been established, the court shall inquire of the child's mother and of any other appropriate person present as to the identity and address of any and all presumed or alleged fathers of the child. Questions, at the discretion of the court, may include:

"(1) Has there been a judgment of paternity?

"(2) Was the mother married, or did she believe she was married at or after the time of conception?

"(3) Was the mother cohabiting with a man at the time of conception?

"(4) Has the mother received support payments or promises of support for the child or for herself during her pregnancy?

"(5) Has a man formally or informally acknowledged paternity, including the execution and filing of a Voluntary Declaration of Paternity under Family Code section 7570 et seq., and agreed to have his name placed on the child's birth certificate?

"(6) Have paternity tests been administered, and if so, what were the results?

"(c) If a voluntary declaration as described in Family Code section 7570 et seq. has been executed and filed with the California Department of Social Services, the declaration shall establish the paternity of a child and shall have the same force and effect as a judgment of paternity by a court.

"(d) If at any proceeding regarding the child, the issue of paternity is addressed by the court, the court shall proceed as follows:

"(1) Make inquiry of the mother or the person alleging paternity, and of others present, as to whether any paternity finding has been made and if so, what court made it, or whether a voluntary declaration has been executed and filed under the Family Code.

"(2) Direct the court clerk to prepare and transmit Judicial Council form *Paternity Inquiry—Juvenile* (JV-500) to the county office of child support enforcement requesting an inquiry regarding whether or not paternity has been established through any superior court order or judgment or through the execution and filing of a voluntary declaration under the Family Code.

"(3) The office of child support enforcement shall prepare and return the completed Judicial Council form *Paternity Inquiry—Juvenile* (JV-500) within 25 judicial days, with certified copies of such order or judgment or proof of the filing of a voluntary declaration attached.

■ A voluntary declaration of paternity "shall establish the paternity of a child and shall have the same force and effect as a judgment of paternity by a court." (Rule 1413(c); Fam. Code, § 7573.) In addition to other requirements, a voluntary declaration must contain a statement by the mother that the man signing the declaration is the only possible father, as well as a statement by the father that he is the biological father. (Fam. Code, § 7574, subd. (b)(5), (6).) A voluntary declaration of paternity entitles the man who signs it to presumed father status. (Fam. Code, § 7611.)

The voluntary declaration of paternity executed by Roger D. and the minor's mother contained the statutorily required statements concerning Roger D.'s biological paternity. Thus, the issue of the minor's paternity was resolved by the declaration before appellant appeared at the jurisdiction hearing. Based on that declaration, the juvenile court declared Roger D. to be the minor's presumed father.

---

"(4) The juvenile court shall take judicial notice of the prior determination of paternity.

"(e) If the office of child support enforcement states, or if the court determines through statements of the parties or other evidence, that there has been no prior determination of paternity of the child, the juvenile court may make such a determination.

"(1) To determine paternity, the juvenile court may order the child, the mother and any alleged father to submit to blood tests and proceed under Family Code section 7550 et seq.; or

"(2) The court may make its determination of paternity or nonpaternity based on the testimony, declarations, or statements of the mother and alleged father. The court shall advise any alleged father indicating he wishes to be declared the father of the child that if he is declared the father he will have responsibility for the financial support of the child, and if the child receives welfare benefits, the father may be subject to an action to obtain support payments.

"(f) If the court establishes paternity of the child, the court shall sign and then direct the clerk to transmit Judicial Council form *Paternity—Finding and Judgment [Juvenile]* (JV-501) to the office of child support enforcement.

"(g) If, upon inquiry by the court, or through other information obtained by the county welfare department or probation department, one or more men are identified as alleged fathers of a child for whom a petition under section 300, 601, or 602 has been filed, the clerk shall provide to each named alleged father, at the last known address, by certified mail, return receipt requested, a copy of the petition, notice of the next scheduled hearing, and Judicial Council form *Statement Regarding Paternity [Juvenile]* (JV-505) unless:

"(1) The petition has been dismissed; or

"(2) Dependency or wardship has been terminated; or

"(3) The man has previously filed a JV-505 form denying paternity and waiving further notice; or

"(4) The man has relinquished custody of the child to the county welfare department.

"(h) If a man appears at a hearing in a dependency matter, or at a hearing under section 601 or 602 [of the Welfare and Institutions Code] and files an action under Family Code section 7630 or 7631, or requests a finding of paternity on form JV-505 in a dependency matter or by written request in a [Welfare and Institutions Code] section 601 or 602 matter, the court shall determine whether or not he is the biological father of the child."

Nonetheless, appellant claims that, under subdivision (b) of section 316.2, the juvenile court was required to serve him, as an alleged father, with Judicial Council form JV-505, which would have allowed him to compel the court to determine whether he was the minor's biological father. (Rule 1413(h).) We disagree.

■ The words of a statute must be read " ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.]" (*People v. Hammer* (2003) 30 Cal.4th 756, 763 [134 Cal.Rptr.2d 590, 69 P.3d 436].) ■ Rule 1413(a) clarifies that the juvenile court has a duty to determine parentage only if it has not otherwise been determined. As the issue of paternity had already been resolved by the voluntary declaration of paternity, the need to further pursue the issue through the procedures outlined in section 316.2 was obviated.

■ Our analysis of section 316.2 is consistent with the statutory scheme in the Family Code concerning the effect of a voluntary declaration of paternity. A voluntary declaration of paternity may be rescinded by either parent within 60 days of the date of execution (Fam. Code, § 7575, subd. (a)); it also may be set aside based on genetic testing. However, with limited exceptions not applicable here, a motion for testing may be brought only by a child support agency, the child's mother, or the man who signed the voluntary declaration. (Fam. Code, § 7575, subd. (b).) Only if the child's mother consents to the relinquishment of the child for adoption can an alleged father bring an action to declare himself the natural father of a child who has a presumed father. (Fam. Code, § 7631.) There is no other statutory provision permitting an alleged father to request genetic testing to set aside a voluntary declaration of paternity.

Appellant cites *In re Paul H.*, *supra*, 111 Cal.App.4th 753, in which this court remanded a matter to the juvenile court because the record failed to reflect that an alleged father had been given the opportunity afforded by section 316.2 to request court-ordered paternity testing. However, that case did not involve a competing interest in the child by another man who had been declared to be the child's presumed father and whose paternity had been established by a voluntary declaration of paternity. Consequently, appellant's reliance on that case is misplaced.

For the foregoing reasons, we conclude that the provisions of section 316.2 for inquiring about paternity and providing notice to alleged fathers did not apply after paternity was established by the valid execution of a voluntary declaration of paternity.

## Disposition

The juvenile court's order is affirmed.[4]

Sims, Acting P. J., and Hull, J., concurred.

---

[4] Appellant states in his notice of appeal and his opening brief that he is appealing also from the juvenile court's order denying his petition for modification. (§ 388.) Appellant does not raise any legal arguments directly challenging the denial of the petition for modification and, consequently, we have addressed only the juvenile court's order terminating parental rights. Accordingly, and for the reasons expressed in this opinion, the order denying appellant's petition for modification is affirmed.