[No. A104054. First Dist., Div. Five. Dec. 8, 2003.]

In re ASHLEY M., a Person Coming Under the Juvenile Court Law.
SAN MATEO COUNTY HUMAN SERVICES AGENCY, Plaintiff and
Appellant, v.
RONNIE M. et al., Defendants and Respondents.

---

**COUNSEL**

Thomas F. Casey III, County Counsel, and Michael P. Murphy, Chief Deputy County Counsel, for Plaintiff and Appellant.

Janet H. Saalfield, under appointment by the Court of Appeal, for Defendant and Respondent Ronnie M.

Janet G. Sherwood, under appointment by the Court of Appeal, for Defendant and Respondent Lady D.

---

**OPINION**

**JONES, P. J.**—We are asked to decide in this appeal whether the juvenile court exceeded its authority by directing that a particular social worker be assigned to the case, over the objection of the social worker's employer, the San Mateo County Human Services Agency (SMHSA). We will modify the dispositional order.

### FACTUAL AND PROCEDURAL BACKGROUND

*The Initial Dependency Petition*

A petition was filed in May 2002 to make Angelo M., then 12 days old, and his 16-month-old sister, Ashley, dependents of the juvenile court based on allegations that Angelo had suffered multiple fractures in nonaccidental trauma while in his parents' care. The petition, as amended, was sustained, the children were removed from parental custody, and reunification services were ordered for both parents, including supervised visits. The juvenile court gave SMHSA discretion to allow unsupervised visits as appropriate.

On December 24, 2002, Angelo was released to his parents for an overnight unsupervised visit. Ashley had already been released to parental

custody based on reports that the parents were complying with the reunification plan. On Christmas Day, the mother took Ashley to the home of relatives, leaving baby Angelo in the care of the father. When the mother returned home that evening, Angelo was gasping and choking. The parents took Angelo to the hospital, where he died on December 26 from shaken baby syndrome. The father was arrested and charged with the murder of Angelo.

*The Supplemental Petition*

A supplemental petition was filed to remove Ashley from parental care based on the death of Angelo. At the jurisdictional hearing, the juvenile court sustained the petition. On its own motion and in order to obtain information for purposes of disposition, the juvenile court undertook an inquiry into the death of Angelo, expressing "grave concerns" about the reports that had been previously submitted by SMHSA.

In April 2003, after several days of testimony, the juvenile court issued a 54-page statement of findings concerning SMHSA's handling of Angelo's case. The court found that several social workers had failed to provide complete information in their reports to the court and that the social worker assigned to the case in December 2002 had failed to supervise Angelo's case adequately, had failed to exercise her discretion properly concerning unsupervised visits, and had not been credible in her testimony during the court's inquiry. The court further found that the management of SMHSA had interfered with the court's investigation, concealed information, and failed to recognize that SMHSA is accountable to the court. The court made several recommendations for changes.

Meanwhile, in March 2003 the social worker newly assigned to Ashley's case (Barbara Byrne) submitted a report for purposes of the disposition hearing giving SMHSA's recommendation that reunification services be denied to both parents. In May 2003, Ms. Byrne submitted an addendum to the disposition report advising the court that the mother was consistently visiting with Ashley and Ashley was very emotionally attached to her mother. The social worker's report continued to recommend that reunification services be denied. However, at the disposition hearing, Barbara Byrne testified that she did not agree with that recommendation. The decision to deny reunification services had been made by the management at SMHSA and was accordingly placed in the report. But Ms. Byrne believed that the mother could be reunited with Ashley.

The juvenile court found that reunification services should be denied to the father. However, the court found that reasonable efforts had not been made by

SMHSA to prevent the need for removal of Ashley from her mother's custody and reasonable reunification services had not been offered. The court continued the matter for development of a reunification plan, and Barbara Byrne then submitted a proposal, which the court adopted on June 10, 2003.

The court further ordered that case management responsibilities be assigned to Ms. Byrne and "[a]ll social studies reports and recommendations to the Court should reflect Barbara Byrne's own professional opinions; however, any contrary opinions held by [SMHSA] management should also be reported to the Court." The court explained that this "unusual" order was "based on [the court's] oversight authority of the department and its need to feel assured that its orders will be, in fact, enforced and delivered." SMHSA had objected to the proposed order as a violation of the separation of powers doctrine.[1] The court impliedly overruled the objections by adopting the order nonetheless.

SMHSA appeals from the dispositional order insofar as that order mandates the assignment of Barbara Byrne. (A separate appeal by the father is pending before us in case No. A103203. We severed the two appeals to allow this appeal by SMHSA to be expedited.)

## DISCUSSION

At the outset, we emphasize that this appeal is confined to one narrow aspect of the juvenile court's decision, and no challenge has been made at all to the juvenile court's critical findings concerning the handling of Angelo's case. On the limited question before us, we are persuaded that the juvenile court went too far in ordering the assignment of a specifically named social worker to Ashley's case.

The California Constitution provides as follows: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.) We conclude that the juvenile court improperly invaded the executive functions of the county's social services agency.

■ The juvenile court is a special department of the superior court whose powers are limited to those granted by the Juvenile Court Law (Welf. & Inst. Code, § 200 et seq.) plus those incidental thereto.[2] (§ 245; *In re Lisa R.*

---

[1] The record indicates that the juvenile court had assigned a particular social worker in some previous cases without objection by SMHSA.

[2] Except as otherwise indicated, all statutory references are to the Welfare and Institutions Code.

(1975) 13 Cal.3d 636, 643 [119 Cal.Rptr. 475, 532 P.2d 123]; *In re Jody R.* (1990) 218 Cal.App.3d 1615, 1622–1623 [267 Cal.Rptr. 746].) Under the Juvenile Court Law, the juvenile court is authorized to make orders pertaining to abused or neglected children who come within the court's jurisdiction. (§§ 361, 362.)

█ The county's social services agency plays a "hybrid" role in dependency proceedings, exercising both executive and judicial functions. (See *In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1238 [255 Cal.Rptr. 344].) "The juvenile law system envisions a cooperative effort between the [social services agency] and the juvenile court." (*Id.* at p. 1234.) The social services agency has the initial responsibility to investigate allegations of abuse or neglect and has authority to take temporary custody of an abused or neglected child. (§ 306.) But the agency must account to the court on the reasons for removing the child from home and on the services available to facilitate the child's return. (§ 319.) When, at the disposition hearing, the court decides to keep the child out of parental custody, the court must (with exceptions) order the social services agency to provide child welfare services to the parents and the child with the aim of reuniting the family. (§§ 300.2, 361.5, subd. (a).)

█ In providing child welfare services, the county's social services agency acts as an administrative agency of the executive branch, subject to supervision by the State Department of Social Services. (§§ 202.5, 10000, 10051, 10800, 16500, 16500.1, 16501; *Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125, 143–144 [32 Cal.Rptr.2d 643]; *In re Danielle W., supra,* 207 Cal.App.3d at pp. 1235–1236, fn. 6.)[3] The juvenile court maintains ultimate control over the delivery of services through its authority to decide that the services offered or provided to the parents were unreasonable and that further services must be offered by the social services agency. (§§ 366, subd. (a)(1)(B), 366.21, subds. (e), (f), 366.22, subd. (a), 366.26, subd. (c)(2); see *In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1213–1215 [31 Cal.Rptr.2d 75].)

█ In addition to providing child welfare services to the family involved in a dependency proceeding, the county's social services agency provides essential information to the court. At each stage of the dependency proceeding, the social services agency is statutorily mandated to prepare social study reports and make recommendations to assist the court. (§§ 280, 281, 319, subd. (b), 358, subd. (b), 358.1, 361.5, subd. (c), 364, 365, 366.21, subds. (c),

---

[3] The social services agency also serves an executive function when it acts as the prosecuting arm of the state and initiates a juvenile dependency proceeding. (§§ 309, 311, 325; see *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 880–881 [271 Cal.Rptr. 513]; *In re Danielle W., supra,* 207 Cal.App.3d at p. 1238.) The same is true during the course of the dependency proceeding, in which the social services agency bears the burden of proof. (§§ 319, 350, subd. (c), 355, 366.21, subds. (e), (f), 366.22, subd. (a), 366.26, subd. (c)(1).)

(e), (f), 366.22, subd. (a), 366.26, subd. (b).) In this role, the social services agency acts as an impartial arm of the court in assisting the court to carry out the Juvenile Court Law. (*In re Malinda S.* (1990) 51 Cal.3d 368, 377, fn. 8 [272 Cal.Rptr. 787, 795 P.2d 1244]; see Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2003) § 2.63[1], p. 2-121-122 (Seiser & Kumli).)

■ The duties to furnish child welfare services and to provide reports and recommendations to the juvenile court are actually placed by statute upon "the social worker." The juvenile court law originally called for various tasks to be performed by the *probation officer.* (See *Nicholl v. Koster* (1910) 157 Cal. 416, 418 [108 P. 302].) Later, the Legislature authorized each county board of supervisors to delegate the duties of the probation officer under the juvenile dependency laws to the county welfare department. (§§ 272, 306.) Now, by statute, each county's welfare department is required to have a specialized unit for the administration of child welfare services. (§§ 10800, 16500, 16501.) And most provisions of the juvenile dependency law have been changed so that the term "probation officer" is replaced by "social worker." (Stats. 1998, ch. 1054.) The terms are now deemed interchangeable. (Cal. Rules of Court, rule 1401(a)(21) & (29).) The term "social worker" within the juvenile dependency law obviously means the county's social services agency to which the duties formerly assigned to the probation officer have been delegated.

As noted, it has been said that in performing some functions in juvenile dependency cases the social services agency serves as an "arm of the court." (See *In re Malinda S., supra,* 51 Cal.3d at p. 377, fn. 8; *In re Walter E.* (1992) 13 Cal.App.4th 125, 137 [17 Cal.Rptr.2d 386]; *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 759 [270 Cal.Rptr. 326]; *In re Danielle W., supra,* 207 Cal.App.3d at p. 1234.) We have no doubt that the social services agency is subject to some supervision by the juvenile court. We also have no doubt that the juvenile court believed its "unusual" order was necessary to assure that the court received accurate information and that its orders were being carried out by SMHSA. However, we conclude that the decision to assign specific duties to a particular social worker is not a decision that falls within the realm of the juvenile court's powers.[4]

---

[4] We are not persuaded otherwise by section 16513.5, which allows the juvenile court, upon motion of a party, to remove a social worker from a dependency case upon finding a conflict of interest that interferes with the social worker's ability to carry out his or her duties. Such a conflict might be found when (1) the social worker had sexual contact with a party; (2) the social worker has a relationship with the prospective adoptive parents; or (3) the social worker has been convicted of perjury with respect to the dependency proceeding before the court. (§ 16513.5.) Nothing in the statute gives the juvenile court authority to designate a particular social worker for a case.

The internal management of the social services agency is given by statute to the county's director of social services, who acts on behalf of the county's board of supervisors. (§§ 306, 10800–10802.) We have taken judicial notice of the San Mateo Ordinance Code, chapter 2.60, which correspondingly establishes the office of Director of the Human Services Agency to administer SMHSA. The county director is empowered to employ personnel and establish administrative units as necessary or desirable for the proper and efficient administration of the agency. (§ 10803.) The determination of how best to assign duties to employees and otherwise allocate the agency's resources is not a judicial function and must be left to the agency's own discretion. In the words of one treatise, "[t]he decision as to what social worker to assign to a case is made by the social services agency. The court has no jurisdiction to order that a particular worker handle a particular case." (Seiser & Kumli, *supra*, § 2.64[3], p. 2-123.)

*In re Walter E., supra,* 13 Cal.App.4th 125, provides guidance on this point. In that case, the juvenile court, acting pursuant to its statutory authority (§ 370), ordered the social services agency to obtain the services of an expert—a psychologist to evaluate the mother. On appeal, the question raised by the mother was whether the juvenile court properly delegated the selection of the particular expert to the social services agency, and the appellate court held that it did. The appellate court reasoned that the selection of a specific expert is essentially a ministerial function that should be left to the agency with expertise in the area "[a]s a matter of sound public policy." (*In re Walter E.* at p. 137.) The juvenile court's function is to determine the need for an expert. Selection of a particular expert is "not primarily a judicial function" but part of the powers vested in the social services agency to deliver appropriate therapeutic treatment to dependent children. (*Id.* at p. 136.) The juvenile court's ultimate control is through its review of the expert's report at the jurisdictional and dispositional hearings. (*Ibid.*)

So, too, in the present case, we conclude that the juvenile court's function was limited to compelling SMHSA to fulfill its responsibilities, including providing appropriate case management, reasonable reunification services, and adequate reports to the court. Certainly upon finding that SMHSA failed to provide adequate services to the mother, the court had the remedy of ordering, as it did, that further services be provided. Upon finding that SMHSA's reports were incomplete or inaccurate, the court could have directed the agency to submit additional or more detailed reports, could have directed the social workers who prepared the reports to appear in court for questioning, could have appointed an outside expert to review the parent-child relationship, and could have fashioned other appropriate remedies

directed to the agency as a whole.[5] The court is also free, of course, to disregard the recommendations of the social services agency. But in compelling the participation of a particular social worker the juvenile court exceeded its authority. As a matter of public policy and under the doctrine of separation of powers, designation of the social worker to perform the tasks of the social services agency must be left to the discretion and expertise of the SMHSA director.

## DISPOSITION

The order of June 10, 2003, is ordered modified by striking paragraph 3 on pages 12 to 13. In all other respects, the order awaits our further review in case No. A103203.

Stevens, J., and Simons, J., concurred.

A petition for a rehearing was denied January 7, 2004, and respondents' petitions for review by the Supreme Court were denied March 3, 2004.

---

[5] The juvenile court may punish disobedience of its orders with the power of contempt. (§ 213; see *In re Nemis M.* (1996) 50 Cal.App.4th 1344, 1352 [58 Cal.Rptr.2d 324].)