[No. A109479. First Dist., Div. Five. Apr. 25, 2006.]

In re VANESSA M., a Person Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
FRANKLIN M., Defendant and Appellant.

COUNSEL

Deborah Dentler, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard E. Winnie, County Counsel, and Calvin James, Assistant County Counsel, for Plaintiff and Respondent.

OPINION

SIMONS, J.—In this juvenile dependency case, Franklin M. (Father) failed to appear for several court dates in a multi-day jurisdictional hearing. Dissatisfied with Father's explanations, the juvenile court in Alameda County imposed an "evidence sanction" barring Father's testimony, though he had appeared in a timely fashion and was prepared to testify on the date the sanction was imposed. The court then proceeded with the hearing and admitted additional evidence. Several days later, pursuant to section 300 of the Welfare and Institutions Code,[1] the court entered an order adjudging Father's daughter, Vanessa, a dependent child of the court and removing her from his physical custody. Father challenges that order, arguing, inter alia, that barring his testimony violated his right to procedural due process. We agree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

*Section 300 Petition*

On December 10, 2004, the Alameda County Social Services Agency (agency) filed a section 300 dependency petition on behalf of seven-year-old Vanessa. The petition alleged that she came within the jurisdiction of the court under section 300, subdivisions (b), (d) and (g). Under subdivision (b), failure to protect, it was alleged that the minor "has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness, by the inability of the parent, . . . to provide regular care for the child" due to Father's substance abuse.[2] Under section 300, subdivision (d), sexual abuse,

---

[1] All undesignated section references are to the Welfare and Institutions Code.

[2] Specifically, the petition alleged, under paragraph B-1, that Father has a substance abuse problem that "hinders his ability to parent to wit: [¶] (A) The minor has not had a medical or dental exam in several years while in . . . [F]ather's care; [¶] (B) A special hearing was held to enroll Vanessa into school this academic year due to her high absenteeism from school last year; [¶] (C) Vanessa has been living with relatives for the past several months due to . . . [F]ather's homelessness and his inability to care for the minor adequately."

The petition also alleged, under paragraph B-2, that "[F]ather's behaviors suggest that he may have sexually abused Vanessa to wit: [¶] (A) On more than one occasion, . . . [F]ather has been

it was alleged that the "child has been sexually abused, or there is a substantial risk that the child will be sexually abused," by Father.[3] Under section 300, subdivision (g), it was alleged that "the child has been left without any provision for support."[4]

*Detention Report*

According to the agency's detention report of December 13, 2004, Vanessa was taken into protective custody because of suspicions that Father sexually abused her. Detective Ramsey (Ramsey) and child welfare worker Beverly Kasahara interviewed the minor, who did not disclose any sexual abuse by Father. Vanessa did state that Father yelled at her when she got into trouble, but did not hit her. She also stated that her paternal grandmother (Grandmother) and her Father argued frequently.

The report also incorporated statements from the minor's maternal aunt (Aunt), the minor's maternal cousin (Cousin), and Ramsey.

Aunt stated that Father had been in and out of Vanessa's life for some time, leaving for a few months and then reappearing. She also stated that Father had been staying at the home of Grandmother, but Grandmother made him leave because of his propensity for violence. Aunt further described Father's violent behavior and history of drug abuse. She also stated that Father had threatened to shoot and kill Grandmother, threw objects at Grandmother and stole money from her barbershop. As a result, Grandmother had a restraining order against Father. Aunt also stated that she did not want Father in her home because she was afraid of him.

Cousin expressed her concern that Father might be molesting Vanessa, that Vanessa had excessive absences from school and had not been to a doctor or dentist in years. Cousin stated that Vanessa had been living in her home and in Aunt's home for three or four months. She also said that Father had a

---

alone with the minor in the bathroom for an extended amount of time and he was seen standing close to her face, buckling his belt buckle; [¶] (B) [F]ather constantly has Vanessa sitting on his lap in a suggestive manner; [¶] (C) [F]ather oftentimes refers to Vanessa as 'Baby' and not by her name; [¶] (D) When Vanessa is questioned about being sexually abused by . . . [F]ather, she clams up, she's forgetful of events or she ignores the question altogether."

Under paragraph B-3, the petition alleged that "[F]ather has a propensity for violence to wit: [¶] (A) [F]ather was suspected of and arrested for the death of the mother; [¶] (B) [F]ather has verbally threatened to shoot and kill his mother; [¶] (C) [F]ather's mother has a restraining order against him because of his threats of violence."

[3] The petition realleged, under paragraph D-1, the same allegations made under B-2.

[4] The petition alleged under paragraph G-1, that the mother is deceased and, under G-2, Father "does not have a stable place of abode, he's unemployed and he's unable to care for the minor at this time."

history of violence and drug use, and expressed deep concern about Vanessa's safety when she was with Father.

According to the report, Ramsey stated that, in April 1999, Vanessa's mother died under suspicious conditions and Father was arrested in connection with her death, but was later released. Ramsey also stated that Father had violated prior restraining orders against him. He further stated that Father admitted to using a variety of drugs, including crystal methamphetamine, cocaine, heroin and alcohol.

### Detention Hearing

Father did not appear at the December 13, 2004 detention hearing. The court ordered Vanessa detained and removed from Father's physical custody. The agency was given discretion to release Vanessa to a suitable adult relative and was ordered to arrange a visit for Vanessa with Cousin, which became a trial placement or "extended visit" with Cousin. Father appeared at a December 28 "uncontested hearing," at which counsel was appointed for him.

### Jurisdictional/Dispositional Report

The agency filed a jurisdictional/dispositional report on December 22, 2004, relating that a social worker met with Father, who denied the sexual abuse allegations. Father admitted to using drugs in the past and expressed his desire that Vanessa live with Cousin until he could obtain a stable residence. The report depicted Vanessa as an engaging child with no "sexualized behaviors," who was "close" to Father. The report recommended that she be adjudged a dependent of the court and that family reunification services be provided to Father.

### Jurisdictional/Dispositional Hearing

Father failed to appear at the January 3, 2005 contested jurisdictional hearing, and Father's counsel stated he believed Father was absent because he had informed Father a continuance would be sought. The court responded it normally would proceed in Father's absence, but would give him the benefit of the doubt and assume his absence was due to a misunderstanding. Before the court selected a new date, Grandmother entered the courtroom and stated that Father's car had broken down. The court continued the matter so that Father's counsel could subpoena Vanessa's medical and school records.

On January 19, 2005, Father appeared at the continued jurisdictional hearing. His counsel attempted to orally demur to "a number of the allegations in the petition," but the court found the request untimely. The agency then withdrew its sexual abuse allegations under section 300, subdivisions (b) and (d).

Grandmother testified that Father and Vanessa lived with her during the five-year period between the mother's death and September 2004. She further stated that in October 2004, she obtained a restraining order against Father because she was fearful of him due to their frequent arguments. When shown a copy of the restraining order, which stated that Father had threatened to kill her, she claimed the statement was inaccurate because he had never made such threats, and she insisted that she had never stated that Father had made such threats. She also testified that she believed Father used drugs.

The contested jurisdictional hearing was continued to January 26, 2005. Father failed to appear without explanation. Vanessa's counsel called Ramsey to testify, but Father's counsel objected on the basis that Father should be present for the testimony. The court overruled the objection.

Ramsey testified he became involved in the case after he was informed of the sexual abuse allegations. After Vanessa was taken into protective custody, Father voluntarily went to the police station where Ramsey interviewed him. Ramsey testified that during the interview, Father stated that he had an ongoing drug problem for the last five years and that he had used crystal methamphetamine, cocaine, heroin and marijuana. Ramsey also testified that Father appeared under the influence of some controlled substance during the interview.

Following Ramsey's testimony, the agency stated that it wished to call Father as a witness but he was not present. The agency requested the court issue an "evidence sanction" and preclude Father from testifying in the proceedings. Father's counsel argued the sanction would prove too harsh. The court stated that if Father provided a valid explanation at the next hearing it would not impose the sanction. The agency then rested its case, subject to its right to call Father if he appeared.

Father was not present for the next court date, January 27, 2005. Because one of the attorneys was also unable to appear, the court continued the matter to January 31, 2005.

On January 31, 2005, Father appeared and explained he had failed to appear on January 26 because he had been in a car accident and was unable to leave his house on the day of the hearing. He presented a document showing he had been seen at a hospital emergency room on January 24. The court informed Father of the agency's request for sanctions and stated it was not sure if it believed Father's explanation. The court then stated that it would not preclude Father's testimony.

Father was then called by the agency and testified that he was unemployed and homeless. Father denied telling Ramsey that he had an ongoing drug problem and used heroin and cocaine, although he did admit that he told Ramsey that he had used crystal methamphetamine and marijuana in the past. He denied threatening to harm Grandmother, but did testify that he and Grandmother argued. He testified that Vanessa had missed school approximately five times and the school required a hearing due to Vanessa's move to a new city.

After being examined by counsel for the agency and for Vanessa, Father was briefly examined by his own attorney. He testified he ate breakfast with Vanessa in the mornings, drove her to school most mornings, met with her teachers and took her to a bookstore and medical visits. At the close of the court session, the court then ordered him to return on February 28, 2005, to complete his testimony.

On February 28, 2005, Father appeared, but the hearing was continued because there was no interpreter available.

On March 2, 2005, Father arrived at the continued hearing more than two hours late. Prior to Father's arrival, the agency objected to any further testimony from Father due to his absence. The court tentatively granted the agency's request, subject to an explanation by Father. In addition, the court and counsel considered certain discovery motions. When Father arrived and explained that he "woke up late," the court advised him that, in the future, his tardiness and absence would carry consequences. The court then continued the matter to March 4 and ordered Father to undergo drug testing.

On March 4, 2005, Father appeared at the hearing on time and prepared to resume his testimony. The court stated Father had not provided proof of good cause as to why he appeared late at the March 2 hearing and had failed to appear at previous hearings. Over Father's counsel's objections, the court granted the agency's request barring further examination of him by his counsel. The court, however, did not strike the testimony provided by Father on January 31. Father then called several witnesses, including Cousin and Aunt.

On March 8, 2005, the agency informed the court that the results from Father's court-ordered drug test indicated that he had tested positive for methamphetamine, cocaine and marijuana.

### Findings and Orders

On March 9, 2005, the court rendered its decision, finding the following allegations true: paragraphs B-1, Father's substance abuse problem hinders his ability to parent, based on the testimony of Ramsey and Father and Father's recent drug test; B-1(A), Vanessa had not had a medical or dental exam in several years based on medical records in the court file; B-1(B), a special hearing was required to enroll Vanessa in school due to her high absenteeism, based on the testimony of Cousin and the school records; and B-1(C), Vanessa needs to live with relatives due to her Father's homelessness and inability to care for her.

The court also found true the following allegation: paragraph B-3, that Father has a propensity for violence, based on the testimony of Aunt. The court then amended the petition to conform to proof by adding the following allegations: paragraphs B-3(A), Father was suspected of and arrested for the death of the minor's mother and then released;[5] B-3(B), Father had verbally threatened to kill Grandmother;[6] B-3(C), Grandmother has a restraining order against Father because of his threats of violence;[7] B-3(D), Father broke Grandmother's phone because it was ringing incessantly and then handed it to her; B-3(E), Father, observed by Aunt, hit the minor and pulled her arm on two occasions, and Vanessa was afraid of Father and did not wish to see him or go with him; and B-3(F), Vanessa states that Father yells at her when she gets in trouble.[8] The court also found true all section 300, subdivision (g) allegations, including Father's failure to provide for Vanessa's support, based on the testimony of Father, Cousin, Grandmother and the agency reports.

The court declared Vanessa a dependent of the juvenile court and removed her from the physical custody of Father. Additionally, the court ordered the agency to provide child welfare services to Vanessa and Father and ordered Father to comply with the case plan. The court stated that it did not see a case

---

[5] The court based this allegation on the testimony of Cousin and page seven of the December 28, 2004 agency report.

[6] The court modified the original reference to Father's alleged threat from "shoot his mother" to "kill his mother" because none of the evidence submitted referenced "shooting."

[7] The court based this allegation on the restraining order and the testimony of Ramsey.

[8] The court based this allegation on page 10 of the December 28, 2004 agency report.

plan attached to the report but wanted Father to participate in anger management classes in addition to substance abuse treatment. Counsel for the agency then provided the court with a copy of the case plan and said the agency would update the plan to include anger management classes.

On March 10, 2005, Father filed a notice of appeal from the order adjudging Vanessa a dependent and removing her from his physical custody.

## DISCUSSION

Father maintains that the court's refusal to hear his testimony resulted in a denial of due process. We agree and find that this denial was not harmless beyond a reasonable doubt.

### Procedural Due Process

■ Impairment of the fundamental right to parent must comport with the requirements of procedural due process. (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 412 [15 Cal.Rptr.2d 613].) ■ "Procedural due process is not absolute. '[O]nce it has been concluded that a due process right exists, we balance . . . factors . . . to decide what process is due. [Citation.] This flexible balancing standard considers " '(1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the [dignity] interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]' " ' " (*In re Matthew P.* (1999) 71 Cal.App.4th 841, 850–851 [84 Cal.Rptr.2d 269], quoting *In re Malinda S.* (1990) 51 Cal.3d 368, 383 [272 Cal.Rptr. 787, 795 P.2d 1244].) "In juvenile dependency litigation, due process focuses on the right to notice and the right to be heard." (*In re Matthew P.*, at p. 851.)

In the context of this jurisdictional hearing, we must balance Father's desire to retain custody of his daughter and to counter the allegations of the petition against the government's goal of serving Vanessa's best interests by resolving dependency matters expeditiously and allowing the juvenile court

wide latitude to control dependency proceedings. Where, as here, credibility is at stake, parents are entitled to present oral testimony as well as to confront and cross-examine the witnesses against them. (*In re Clifton V.* (2001) 93 Cal.App.4th 1400, 1404–1405 [114 Cal.Rptr.2d 1]; Cal. Rules of Court, rule 1412(j).)[9]

Father is certainly not the most attractive standard bearer for the right to be heard. The jurisdictional hearing spanned more than two months and at least eight different hearings. Of those eight hearings, Father failed to appear at three and was more than two hours late to a fourth. This cavalier disregard for the obligation to appear threatens the child's interest in the prompt resolution of placement issues and the court's need to efficiently dispose of large dependency calendars. Any judicial response to such misconduct is, however, limited by the obligation to protect the important procedural rights involved. Juvenile courts may not deprive a parent of her or his procedural due process rights simply because the parent failed to appear.

*In re Nemis M.* (1996) 50 Cal.App.4th 1344 [58 Cal.Rptr.2d 324] is instructive. In *Nemis M.*, the father failed to appear at a properly noticed jurisdictional hearing in a dependency case without good cause, and the court ruled that the father's absence constituted a "default." (*Id.* at p. 1351.) After the court admitted a social study containing statements by the minor damaging to the father's interests, the court, relying on the default, refused to allow the father's counsel to cross-examine the county's children's services employee who had interviewed the minor or to call two witnesses on behalf of the father. (*Id.* at pp. 1352, 1355.) The Court of Appeal reversed. " 'The consequences of a parent's failure to appear at a scheduled hearing . . . do not include the deprivation of the due process right to confront and cross-examine witnesses.' " (*Id.* at p. 1352, quoting *In re Dolly D.* (1995) 41 Cal.App.4th 440, 446 [48 Cal.Rptr.2d 691]; accord, *In re Wilford J.* (2005) 131 Cal.App.4th 742, 750 [32 Cal.Rptr.3d 317].) "[A] limitation on the parent's right to present witnesses is equally unauthorized." (*In re Nemis M.*, at p. 1352.)

There is no practical difference between the "default" procedure rejected by the appellate courts in *In re Nemis M.* and in *In re Dolly D.* and the evidence sanction imposed by the juvenile court here. Each imposes a penalty on a parent unrelated to the harm directly caused by his or her absence. For

---

[9] Rule 1412(j) of the California Rules of Court provides:

"The court must advise the child, parent, and guardian in section 300 cases, and the child in section 601 or section 602 cases, of the following rights:

"(1) Any right to assert the privilege against self-incrimination;

"(2) The right to confront and cross-examine the persons who prepared reports or documents submitted to the court by the petitioner, and the witnesses called to testify at the hearing;

"(3) The right to use the process of the court to bring in witnesses;

"(4) The right to present evidence to the court."

example, in *In re Nemis M., supra*, 50 Cal.App.4th 1344, though the father was not in the courtroom, his attorney was present and ready to cross-examine one crucial witness and call two others. The father's absence may have hindered his attorney's ability to examine these witnesses, a consequence logically flowing from the decision not to appear. But, the trial court's preclusion of the examination entirely was an additional punishment, imposed without benefit of statutory authority.

Here, the agency has not suggested any statute or rule of court authorizing imposition of the evidence sanction utilized by the juvenile court, and we have found none.[10] Instead, the agency argues we should treat the preclusion of Father's testimony as a sanction imposed for contempt under section 213. The trial court, however, never once referred to "contempt" when considering the penalty it imposed. Further, the court did not provide the required procedural safeguards for such a contempt proceeding, including: service of notice, a formal hearing at which the contemner is entitled to call and cross-examine witnesses, the presumption of innocence, and proof of the contempt beyond a reasonable doubt. (*Farace v. Superior Court* (1983) 148 Cal.App.3d 915 [196 Cal.Rptr. 297].) In fact, the court explicitly refused to allow Father to testify regarding the reasons for his attendance problems before imposing the sanction. Finally, the agency has cited no authority for the proposition that the penalty imposed below is one of the sanctions available to a juvenile court that finds a parent in contempt for failing to appear at a prior proceeding. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522–523 [85 Cal.Rptr.2d 376] [appellate courts may treat issues as waived when unsupported by citation to authority].) And we question whether it is an available sanction. (*In re Michael G.* (1988) 44 Cal.3d 283, 289, fn. 3 [243 Cal.Rptr. 224, 747 P.2d 1152] ["the penalties for violation of [Welfare and Institutions Code] section 213 are apparently those set forth in Code of Civil Procedure section 1218 for contempts generally: a fine of up to $1,000, imprisonment of up to five days, or both."][11]

This conclusion does not leave juvenile courts powerless to deal with failures to appear. When a parent is absent without good cause at a properly noticed hearing, the court is entitled to proceed in the parent's absence. (*In re Christopher A.* (1991) 226 Cal.App.3d 1154, 1162 [277 Cal.Rptr. 302].) A parent's failure to appear will not normally constitute the good cause

---

[10] Despite this lack of authority, the trial court and counsel seemed familiar with this evidence sanction. When counsel for the agency first asked for the sanction, there was no debate regarding the trial court's *power* to impose it, but only whether it was wise to do so in the circumstances of this case.

[11] A court does have the authority to strike prior testimony given by a witness, who then absents himself in order to prevent cross-examination. (See *People v. Miller* (1990) 50 Cal.3d 954, 999 [269 Cal.Rptr. 492, 790 P.2d 1289].) This is not, however, what occurred here.

necessary to justify a continuance (*In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1187 [2 Cal.Rptr.2d 569]), because substantial importance is attached to "the child's need for a prompt resolution of the matter" (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2005 ed.) § 2.104[5], p. 2-169, citing § 352, subd. (a)). An unjustified failure to appear at a duly noticed hearing reflects a parent's choice not to attend. (*In re Gerald J.*, at p. 1187.) A court may properly treat this choice as a waiver of the right to be present *at that hearing* and of the benefits of being present. Imposing this waiver is a sensible and limited response to the parent's decision to be absent.[12] Further, allowing the court to proceed in the parent's absence should ensure that the court, the minor and the other parties are not unduly disadvantaged.

On more than one occasion, the trial court adopted this approach and resolved motions or heard testimony in Father's absence.[13] Father does not contest these decisions in this appeal. Had the jurisdictional hearing concluded on one of those occasions without Father having had the opportunity to complete his testimony, his lack of good cause for the failure to appear would preclude a challenge to that result.

■   While we share the goal of promoting an expeditious resolution of dependency cases, we conclude that punishing parents who fail to appear by depriving them of their rights to procedural due process is error, whether that penalty is deemed an evidence sanction or a consequence of default.

### *Prejudice*

We conclude this error requires reversal. Courts of Appeal have found that a constitutional due process violation in the dependency context requires application of the harmless beyond a reasonable doubt standard, since the error is of federal constitutional dimension. (See, e.g., *In re Angela C.* (2002) 99 Cal.App.4th 389, 391 [120 Cal.Rptr.2d 922] [inadequate notice of hearing at which the mother's parental rights were terminated]; *In re Stacey T.* (1997) 52 Cal.App.4th 1415, 1426 [61 Cal.Rptr.2d 319] [multiple due process violations]; *In re Dolly D., supra*, 41 Cal.App.4th at p. 446 [deprivation of right to confront and cross-examine witnesses].) We find that the error in barring Father's testimony was not harmless under that standard.

---

[12] A similar rule exists in noncapital criminal cases. "The absence of the defendant in a felony case after the trial has commenced in his presence [does] not prevent continuing the trial to, and including, the return of the verdict . . . ." (Pen. Code, § 1043, subd. (b).)

[13] The court proceeded in this fashion at the January 26 and March 2, 2005 jurisdictional hearings.

*In re Dolly D., supra,* 41 Cal.App.4th 440, on which Father relies, is instructive. In that case, although the parent did not attend the hearing, "he was represented by counsel, and his attorney was present and prepared to examine the witness on his behalf." (*Id.* at p. 445.) Nevertheless, the trial court did not permit counsel to do so and, instead, based its jurisdictional finding on a social worker's conclusory report. (*Id.* at pp. 444–445.) The Court of Appeal determined that the trial court's decision deprived the parent of his due process right to confront and cross-examine witnesses. (*Id.* at p. 446.) The appellate court found this error prejudicial because the report upon which the court relied condemned the parent's ability to care for his child and cross-examination of the report's author "could have demonstrated the lack of support for [the] statements." (*Id.* at p. 447.)

The agency argues that the court's error was harmless beyond a reasonable doubt because at a prior hearing Father had provided some testimony and failed to show how further testimony would have changed a decision supported by substantial evidence. We disagree. It is noteworthy that only a small portion of this earlier testimony was elicited by Father's counsel; most of that testimony was in response to questions asked by the agency and Vanessa's counsel. Father's counsel had an opportunity to examine him only as to Vanessa's educational needs, establishing that he knew and had contacts with her kindergarten, first- and second-grade teachers and her medical needs. Father was also examined about a possible bias of Aunt and about using drugs with Aunt and Cousin. Even if we could conclude, beyond a reasonable doubt, that Father had no additional information regarding the issues he testified about during his earlier examination, a conclusion we decline to reach, it would be entirely speculative to decide that additional testimony from Father would not have been useful to the court in resolving the credibility disputes present. Allegations B-1(A), B-1(B), and B-1(C) were charged as consequences of Father's drug abuse. Father, however, vigorously disputed any current use of illegal drugs and never had an opportunity to explain the single strongest piece of evidence against him, the positive drug test results that were produced after the only testimony he was permitted to provide. In addition, Father never had the opportunity to testify regarding allegations B-3(A) and B-3(D) through B-3(F). As to these allegations, all of which were found true by the court, the "swearing contest" anticipated by the requirements of procedural due process was entirely one-sided. (See *In re Clifton V., supra,* 93 Cal.App.4th at p. 1406.) As in *In re Dolly D., supra,* 41 Cal.App.4th 440, had it not been for the violation of Father's due process right to be heard, there was a reasonable possibility that his testimony would have undermined support for the court's findings. This error was not harmless beyond a reasonable doubt.[14]

---

[14] Because we reverse on this basis, we need not address Father's assertions that the juvenile court erred in refusing to hear Father's demurrer, allowing Ramsey and other witnesses to

## DISPOSITION

We reverse.

Jones, P. J., and Stevens, J.,* concurred.

---

testify before Father's counsel could view the police interview videotapes and police report, and ordering Father to comply with a case plan it had not yet reviewed.

*Retired Associate Justice of the Court of Appeal, First District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.